**Case Nos. 13-4172, 13-4268, 14-3352**
(Consolidated)

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
————————

WILLIAM HOWE, et al.,
*Plaintiffs-Appellees* (13-4172, 14-3352) / *Cross-Appellants* (13-4268)*,*
DENNIS R. THOMPSON; CHRISTY B. BISHOP;
BRUCE B. ELFVIN; BARBARA KAYE BESSER;
STUART G. TORCH
*Cross-Appellants* (13-4268),
v.
CITY OF AKRON,
*Defendant-Appellant* (13-4172, 14-3352) / *Cross-Appellee* (13-4268).
————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO,
CASE NO. 5:06-CV-02779

---

## CORRECTED "SECOND BRIEF" OF WILLIAM HOWE, *ET AL.*

---

Dennis R. Thompson (0030098)
Christy B. Bishop (0076100)
THOMPSON & BISHOP LAW OFFICES
946 Kenmore Blvd.
Akron, OH   44314
Tel: (330) 753-6874
Fax: (330) 753 7082
Email: law@thompsonbishop.com
       bishopchristy@gmail.com

Irene C. Keyse-Walker (0013143)
Benjamin C. Sassé (0072856)
TUCKER ELLIS LLP
950 Main Ave., Suite 1100
Cleveland, OH   44115-1414
Tel: (216) 592.5000
Fax: (216) 592.5009
Email: ikeyse-walker@tuckerellis.com
       benjamin.sasse@tuckerellis.com
       karen.ross@tuckerellis.com

Bruce B. Elfvin (0015964)
Barbara Kaye Besser (0017624)
Stuart Torch (0079667)
ELFVIN & BESSER
4070 Mayfield Rd.
Cleveland, OH  44121
Tel: (216) 382-2500
Fax: (216) 381-0250
Email: bbe@elfvinbesser.com
        bkb@elfvinbesser.com
        stuart.torch@elfvinbesser.com

*Counsel for Plaintiffs-Appellees/Cross-Appellants*

Cheri B. Cunningham (0009433)
Director of Law
Patricia Ambrose-Rubright (0009435)
Michael J. Defibaugh (0072683)
Assistant Directors of Law
CITY OF AKRON
161 S. High Street, Suite 202
Akron, OH  44308
Tel: (330) 375-2030
Fax: (330) 375-2041
Email: ambropa@ci.akron.oh.us
        defibmi@ci.akron.oh.us

Monica A. Sansalone (0065143)
Holly M. Olarczuk-Smith (0073257)
GALLAGHER SHARP
Bulkley Building, Sixth Floor
1501 Euclid Avenue
Cleveland, OH  44115-2108
Tel: (216) 241-5310
Fax: (216) 241-1608
Email: msansalone@gallaghersharp.com
        holarczuk-smith@gallaghersharp.com

*Counsel for Cross-Appellants*
*Dennis R. Thompson and Christy B. Bishop*
*and the Thompson & Bishop Law Offices*

Aretta K. Bernard (0039116)
Karen D. Adinolfi (0073693)
ROETZEL & ANDRESS, LPA
222 South Main St.
Akron, OH  44308
Tel: (330) 376-2700
Fax: (330) 376-4577
Email: abernard@ralaw.com
        kadinolfi@ralaw.com

*Counsel for Defendant-Appellant/Cross-Appellee*

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

Pursuant to 6th Cir. R. 26.1, Plaintiffs' counsel/Cross-Appellants, Dennis R. Thompson, Christy B. Bishop, the Thompson & Bishop Law Offices, Bruce B. Elfvin, Barbara Kaye Besser, Stuart Torch, and the law firm of Elfvin & Besser[1] make the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly-owned corporation? If the answer is YES, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

        **No.**

2.    Is there a publicly-owned corporation, not a party to the appeal, that has financial interest in the outcome? If the answer is YES, list the identity of such corporation and the nature of the financial interest.

        **No.**

     s/Monica A. Sansalone                          Date: November 26, 2014
Monica A. Sansalone (0065143)
Holly M. Olarczuk-Smith (0073257)

---

[1] The District Court's sanction Order did not specify any counsel or law firms, but only "Plaintiffs' Counsel." (R. 530, 09/24/12 Order, Page ID# 15368-15369.) It is undisputed that the law firms are not involved, nor are they permitted to be sanctioned under 28 U.S.C. § 1927.

# DISCLOSURE OF CORPORATE AFFILIATIONS
# AND FINANCIAL INTEREST

Pursuant to 6th Cir. R. 26.1, Appellees/Cross-appellants make the following disclosure:

1.     Is said party a subsidiary or affiliate of a publicly-owned corporation? If the answer is YES, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

**No.**

2.     Is there a publicly-owned corporation, not a party to the appeal, that has financial interest in the outcome? If the answer is YES, list the identity of such corporation and the nature of the financial interest.

**No.**

/s/ Dennis R. Thompson                          Date:  November 26, 2014
Dennis R. Thompson (0030098)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES

STATEMENT IN SUPPORT OF ORAL ARGUMENT
AND REQUEST FOR HEARING BY THE ORIGINAL PANEL
ON THE MERITS IN
*HOWE V. CITY OF AKRON,* 723 F.3 651 (6TH CIR. 2013)

STATEMENT OF JURISDICTION

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

I.      STATEMENT OF THE CASE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

A. Akron is found liable for discrimination_. . . . . . . . . . . . . . . . . . . . . . 2

B. The District Court orders a new trial on damages only . . . . . . . . . . . 3

C. Prior to the depositions of Appellees, Appellees advised the
district court and Akron that damages were being calculated
by using a formula to be applied to all Appellees . . . . . . . . . . . . . . . . 4

D. Prior to the 6/17/2011 discovery cut-off, Appellees advise the
District Court and Akron that the damage calculations were being
revised based on inquires made by Akron during Appellees'
depositions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

E. Based on a series of *sua sponte* Orders by the District Court <u>after</u> the
6/17/2011 discovery deadline and immediately before the damages re-
trial, Appellees were required to modify their calculation of damages
to comply with the District Court's Orders . . . . . . . . . . . . . . . . . . . . . 6

F. During the back pay retrial, Akron re-deposes Carr but the District
Court terminates the deposition due to misconduct by Akron's
Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# TABLE OF CONTENTS (Cont'd)

G. The District Court excludes Appellees' Exhibit 208 as a sanction and improperly imposes excessive monetary sanctions against Appellees' counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

H. Continuation of the Damages Retrial 14 months later; Order on FFCL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

I. *Howe I* Decision by this Court (Case No. 11-3751) . . . . . . . . . . . . . . 14

J. Subsequent appeals to this Court: *Howe II* and Appellees' Motion for Reconsideration of Sanctions in the district court . . . . . . . . . . . . . . 15

    1.This Court's *Howe II* decision on sanctions (Case No. 12-4262) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

    2. Appellee's Motion for Reconsideration on the Sanctions Order is Granted in part . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

II.   STATEMENT OF THE FACTS

A. Akron Administered Discriminatory Promotional Examinations Remedied in Part with Back Pay . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

B. The basic formula involved the amount of Appellees' wages Obtained from Akron multiplied by the period of back pay . . . . . . . .17

C. Appellees' PX 208 reflects the same method of calculations previously suggested by Plaintiffs in 2009 . . . . . . . . . . . . . . . . . . . . .20

D. Step increases upon promotion . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

E. Interest post-judgment only . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# TABLE OF CONTENTS (Cont'd)

III.   STANDARDS OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

IV.   SUMMARY OF ARGUMENTS ON CONSOLIDATED . . . . . . . . . . . 22
      APPEALS

   A. Summary of Argument on Appeal Nos. 13-4172 and 14-3352
      (Appellant's Pending Appeals on Backpay and Prospective Relief) . 22

   B. Summary of Argument on Akron's appeal on backpay and
      Appellees' cross-appeal on same, Case Nos. 13-4172 and 13-4268 . . 25

   C. Summary of Arguments on the Sanctions Appeal by Appellees,
      CA 13-4268 combined with CA 13-4268 (Backpay cross-appeal) . . 26

V.   LAW AND ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

   A. Akron's Appeals On Damages, Doc.# 59, Case Nos. 13-4172
      and 14-3352 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

      1. Akron Waives Its Attempt to Return to Liability; there is
         no jurisdiction of this Court over the liability issues
         because it was not preserved on appeal . . . . . . . . . . . . . . . . . . 27

         a. Akron's Backpay Appeal (Case No. 13-4172) . . . . . . . . 28

         b. Akron's Second Appeal on Injunction
            (Case No. 14-3352) . . . . . . . . . . . . . . . . . . . . . . . . . . .30

         c. *HOWE I* Decides the Merits on Liability . . . . . . . . . . . 31

         d. *Howe I's* Findings Control on Liability; Akron
            has waived any argument as to its own burden of
            proof of job-relatedness and business necessity. . . . . . . 35

## TABLE OF CONTENTS (Cont'd)

e. Because Akron failed to raise its full prima facie objections before the Court in the first instance, Law of the Case and Waiver doctrines prevent it from doing so now. . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

f. Piecemeal appeals are frowned upon by the Federal Courts, including the U.S. Supreme Court; moreover, the Appellant in appropriately presented a one-sided view in their portrayal of the facts, contrary controlling law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

g. *Arguendo,* the EEOC 4/5ths Statistical Rule of Thumb is applicable and comports with the findings of the jury and district court . . . . . . . . . . . . . . . . . . . . . 41

2. Appellant notably avoided the all of the expert testimony at trial on the N-of-1 Rule (or "N+1 Rule") as applied to the EEOC 4/5ths Rule . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

3. Akron Waives its Re-Arguments on "Heightened Scrutiny" for Caucasians in Disparate Impact cases, and this Court already has passed on Akron's argument for "Lost Chance" on Promotions and backpay. . . . . . . . . . . . . . . . . . . . . . . . . 51

a. "Heightened scrutiny" was waived by Akron at trial and further does not apply, particularly in disparate impact cases of statistical disparities; to hold one race to a different level of proof is itself discriminatory. . . 51

b. Akron cannot revisit an issue that it never raised at trial and which was passed on in *Howe I,* namely, "Loss of Chance." . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

## TABLE OF CONTENTS (Cont'd)

4. The District Court's Order (RE#643) on Preliminary Injunction and appointing a Court Monitor is limited in duration and narrowly tailored; moreover, Akron has flouted this order in outside negotiations with the Union, while professing to adhere to  dealings with the Court Monitor (Appeal No. 14-3352). . . . . . . . . . . . . . . . . . . . . . . . . 53

   a. Akron has continually defied the district court's orders, despite the refusal to grant Akron's requests for stays on the orders. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .51

     i. "Provisional Promotions" . . . . . . . . . . . . . . . . . . . . . 51

     ii. Akron's illusory attempt to sidestep make-whole relief in the form of prospective relief and exclude the Appellees from clandestine negotiations . . . . . .54

B.   Law And Argument On Appellees' Cross-Appeal On Backpay . . . 60

  1. The District Court Made *Two* Fundamental Errors in Computing Backpay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

   a. The District Court utilized an incorrect start date for the commencement of back pay . . . . . . . . . . . . . . . . . . . . . 61

   b. By ordering the promotion of the Appellees at Step 4, and also by applying the step increases to the backpay awarded to the Appellees, the District Court forced step progression upon Appellees twice  . . . . . . . . . . . . . . . . . . . 63

  2. The District Court improperly excluded Appellees computation of backpay damages from April 2007 (Exhibit 208). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

# TABLE OF CONTENTS (Cont'd)

3. The District Court erred in failing to award pre-judgment Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

4. Errors in <u>specific</u> Appellees' backpay calculations . . . . . . . . . . . .71

C. Law And Argument On The District Court's Sanctions Order . . . . . . .72

1. The District Court Erred By Imposing Sanctions And Awarding Attorney Fees And Costs Totaling $97,056.18 Against The Prevailing Party. . . . . . . . . . . . . . . .73

   a. The standard of review. . . . . . . . . . . . . . . . . . . . . . . . . .73

   b. The concurring opinion of Judge Gilman offers unyielding support for reversing the monetary sanctions Order. . . . . . . . . . . . . . . . . . . . . . . . . . . .73

   c. Judge Adams has now vacated the sanctions Order. . . . . 75

VI.    CONCLUSION AND RELIEF SOUGHT . . . . . . . . . . . . . . . . . . . . . . . . 76

# TABLE OF AUTHORITIES

**Federal Cases**

*Albemarle Paper Co. v. Moody,* 422 U.S. 405 (1975) . . . . . . . . . . . . . . . 44, 60

*Alexander v. Aero Lodge 735*, 565 F.2d 1364 (6th Cir. 1977) . . . . . . . . . . . .  37

*Anderson v. Bessemer City*, 470 U.S. 564 (1985) . . . . . . . . . . . . . . . . . . . . . . 39

*Black v. City of Akron,* 831 F. 2d 131 (6th Cir. 1987) . . . . . . . . . . . . . . . . . . . 44

*Chandler v. Crews*, 503 Fed. Appx. 343 (6th Cir. 2012) . . . . . . . . . . . . . . . .  30

*Curran, v. Merrill, Lynch, Pierce, Fenner & Smith, Inc*., 622 F.2d 216 (1980) . 37

*Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73 (3d Cir. 2009) . . . . . . . . .65

*Edelman v. Lynchburg College*, 535 U.S. 106 (2002) . . . . . . . . . . . . .  44, 45, 46

*EEOC v. Monarch Machine Tool Co.*, 737 F.2d 1444 (6th Cir. 1980) . . . . . . .  62

*EEOC v. Wilson Metal Casket Co.*, 24 F.3d 836 (6th Cir. 1994) . . . . . . 61, 70, 71

*E.E.O.C. v. Wooster Brush Co. Employees Relief Ass'n*, 7
    27 F.2d 566 (6th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

*Ford v. County of Grand Traverse*, 535 F.3d 483 (6th Cir. 2008) . . . . . . . . . . 49

*Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624 (6th Cir. 2009) . . . . 73

*Goyco De Maldonado v. Rivera*,  849 F.2d 683 (1st Cir. 1988) . . . . . . . . . . . .  36

*Grant v. Metro Gov't. of Nashville,* 446 F. Appx. 737 (6th Cir. 2011) .  32, 35, 38

*Gutzwiller v. Fenik*, 860 F.2d 1317 (6th Cir. 1988) . . . . . . . . . . . . . . . . . . . .60, 62

*Hance v. Norfolk S. Ry.*, 571 F.3d 511(6th Cir. 2009) . . . . . . . . . . . . . . . . . . . .61

## TABLE OF AUTHORITIES (Cont'd)

**Federal Cases**

*Howe v. City of Akron,* 789 F.Supp.2d 786(ND Ohio, 2010) . . . . . . . . . . 31, 42

*Howe v. City of Akron*, 723 F.3d 651 (6th Cir. 2012) . . . . . . . . . . . . . . . . . 14, 31

*Howe v. City of Akron*, 557 Fed. Appx. 402 (6th Cir. 2014) . . . . . . . . . . . . . . 15

*In re Bendectin Litigation*, 857 F.2d 290 (6th Cir. 1988),
    *cert. denied*, 488 U.S. 1006 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

*International Bhd. of Teamsters*, 431 U.S. at 339-40 . . . . . . . . . . . . . . . . . . . 47

*Isabel v. City of Memphis,* 404 F.3d 404 (6th Cir. 2005) . . . . . . . . . . . . . . 43, 60

*JGR, Inc. v. Thomasville Furniture Indus.*, 550 F.3d 529 (6th Cir. 2008) . 29, 52

*Johnson v. City of Memphis*, 2006 U.S. LEXIS 97566 (W.D. Tenn. 2006) . . . . 62

*Jones v. Cont'l Corp.*, 789 F.2d 1225 (6th Cir. 1986) . . . . . . . . . . . . . . . . . . . .73

*Jordan v. City of Cleveland*, 464 F.3d 584 (6th Cir. 2006) . . . . . . . . . . . . . . . 40

*Lewis v. City of Chicago*, 560 U.S. 205 (2010) . . . . . . . . . . . . . . . . . . . . . . . . 62

*Loeffler v. Frank*, 486 U.S. 549 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 60, 70

*Louisiana v. United States*, 380 U.S. 145 (1965) . . . . . . . . . . . . . . . . . . . . . . 60

*Mayor of Philadelphia v. Educational Equality League*, 415 U.S. 605(1974) . 47

*McPherson v. Kelsey*, 125 F.3d 989 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . 50

*Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84 (2008) . . . . . . . . . . . . . 46

*Medical Center Pharmacy v. Holder*, 634 F.3d 830 (5th Cir. 2011) . . . . . . . . 38

# TABLE OF AUTHORITIES (Cont'd)

**Federal Cases**

*Neponset Landing Corp. v. Northwestern Mut. Life Ins. Co.,*
2012 U.S. Dist. LEXIS 151456 at 13 (D. Mass. Oct. 22, 2012) . . . . . . . . . . . 66

*Priddy v. Edelman,* 883 F.2d 439 (6th Cir. 1989) . . . . . . . . . . . . . . . . . . 50

*Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614 (6th Cir. 1983) . . .61

*Red Carpet Studios, Div. of Source Advantage, Ltd. v. Slater*,
    465 F.3d 642 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

*Reed v. Mineta*, 438 F.3d 1063 (10th Cir. 2006) . . . . . . . . . . . . . . . . . . 71

*Regents of Univ. of Cal. v. Bakke,* 438 U.S. 265(1978) . . . . . . . . . . . . . . . 51

*Ricci v. DeStefano*, 129 S. Ct. 2658 (2009) . . . . . . . . . . . . . . . . . . . . 43, 45, 51

*Rutherford v. City of Cleveland,* 179 Fed. Appx. 366 (6th Cir. 2006) . . . . . . . . 52

*Smith v. Western Electric Co.,* 770 F.2d 520 (5th Cir.1985) . . . . . . . . . . . . . .44

*Suggs v. Servicemaster Educ. Management Corp.*, 72 F.3d 1228
    (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .62

*Sutter v. U.S. Nat'l Bank (In re Sutter)*, 665 F.3d 722 (6th Cir. 2012) . . . . . . . 30

*Terbovitz v. Fiscal Court of Adair Cty.*, 825 F.2d 111 (6th Cir. 1987) . . . . . . . 61

*Thomas v. Tex. Dep't of Crim. Justice*, 297 F.3d 361 (5th Cir. 2002) . . . . . . . 41

*Tiemeyer v. Community Mutual Ins. Co.*, 8 F.3d 1094 (6th Cir. 1993) . . . . . . .70

*Thurman v. Yellow Freight Systems, Inc.* 90 F.3d 1160 (6th Cir. 1996) . . . 61, 70

*United States v. City of Warren*, 138 F.3d 1083 (6th Cir. 1998) . . . . . . . . . . . 62

*United States v. Glover*, 242 F.3d 333 (6th Cir. 2001) . . . . . . . . . . . . . . . . .29

# TABLE OF AUTHORITIES (Cont'd)

**Federal Cases**

*University of Texas v. Camenisch*, 451 U.S. 390 (1981) . . . . . . . . . . . . . . . . . . 36

*Waisome v. Port Auth. of N.Y. & N.J.*, 948 F.2d 1370 (2d Cir. 1991) . . . . . . . . 47

*West Virginia v. United States*, 479 U.S. 305 (1987) . . . . . . . . . . . . . . . . . . . . . 70

*Wheeler v. Southland Corp.*, 875 F.2d 1246 (6th Cir.1989) . . . . . . . . . . . . . 22

**State Cases**

*Corporate Exchange Bldgs. IV & V, L.P. v. Franklin Cty. Bd. of Revision*,
      82 Ohio St.3d 297, 303 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

**Federal Statutes**

42 U.S.C.2000e-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**Federal Regulations**

29 C.F.R. § 1607, et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

**Federal Rules of Appellate Procedure**

Fed Rule App Proc R 3(c)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 35

**Federal Rule of Evidence**

Fed. R. Evid. 701 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 65

## STATEMENT IN SUPPORT OF ORAL ARGUMENT
## AND REQUEST FOR HEARING BY THE ORIGINAL
## PANEL ON THE MERITS IN *HOWE V. CITY OF AKRON,* 723 F.3D
## 651 (6TH CIR. 2013)

This case originated in 2006. In December 2008, Appellees won 23 jury verdicts on the merits.  The case has thus far involved a trial and retrial on damages, two prior appeals, more than 737 record entries, and has presented questions related to the merits and sanctions.

Currently on appeal are issues related to the damages or back pay awarded by the District Court, the sanctions arising out of the damages retrial, and the granting of injunctive and other equitable relief.  Appellant City of Akron is attempting to re-litigate the underlying liability facts, though Appellees believe these are either waived or have been determined against Appellant previously.

Oral argument is necessary to navigate these waters.

Appellees also request that these appeals be reassigned to the same panel which heard the first appeal, "*Howe I*," 723 F.3d 651 (6th Cir 2013), in which Appellant City of Akron and Appellees raised as to liability/merits.  That panel is familiar with the facts of this complex case, and is likely to be in the best position to understand the intricacies of this now-protracted case, because similar arguments are being raised and disputed again by the parties.  Appellees also are seeking reassignment, if the case is remanded, due to occurrences in this case in

large part by district court Judge Adams, as set forth *infra* and pursuant to 28

U.S.C. § 2106.

## STATEMENT OF JURISDICTION

This Court has subject-matter jurisdiction over all of the consolidated appeals combined in this matter, pursuant to S28 U.S.C.§ 1331, 28 U.S.C.§1927, and supplemental jurisdiction pursuant to 28 U.S.C.§ 1367.[1]

## STATEMENT OF THE ISSUES FOR REVIEW

(1) Whether the trial court erred in using April 4, 2007 (the date the promotional eligibility lists expired) as the date on which back pay commenced, instead of May 16, 2005 (the date on which the first promotions were made from the eligibility lists)?

(2) Whether the trial court erred in its back pay order by failing to award back pay to account for the fact that the Plaintiffs promoted in 2011 were promoted at the entry-level pay step (Step 4), but would have been at the top step (Step 6) by 2011, which would have made Plaintiffs whole vis-à-vis the other firefighters who were promoted based upon the discriminatory exams?

(3) Whether the trial court erred in excluding Plaintiffs' Exhibit 208 during the back pay re-trial, as well as the related testimony of Plaintiffs?

(4) Whether the trial court erred in failing to specifically award pre- and post-judgment interest as a part of the back pay award?

(5) Whether the trial court failed to properly calculate back pay for specific individual Plaintiffs?

---

[1] As set forth *infra,* the parties, including Appellees-Cross Appellants, are unsure of which court has proper jurisdiction over the sanctions issues entered by the trial court pursuant to 28 U.S.C. §1927, since the district court has recently rescinded at least the monetary sanctions against counsel. (RE#722).

(6) Whether the District Court erred by imposing sanctions and awarding attorney fees and costs totaling $97,056.18 against counsel for the prevailing party?

## I.    STATEMENT OF THE CASE

### A.    Akron is found liable for discrimination

In November 2006, this case was filed by a group of firefighters alleging employment discrimination against Akron. (RE#1, Complaint, PageID#1-13; RE#23, Amended Complaint, PageID#136-153). The case proceeded to trial, and on 12/23/2008, the jury returned separate unanimous verdicts in favor of 23 Plaintiffs, finding age and race discrimination regarding the promotional process used by Akron for the ranks of Lieutenant and Captain. (RE#237, Verdicts, PageID#7312-7355; RE#277, Findings of Fact and Conclusions of Law ("FFCL")), PageID#7736-1747). On 10/2/2009, the district court entered judgment for Appellees against Akron in the amount of $1,891,000, plus post-judgment interest. (RE#278, Judgment, PageID#7748-7754).

After entry of judgment in favor of Appellees, the parties engaged in post-trial briefing, in which Appellees' counsel set forth a basic calculation method for the court to set back pay damages. (RE#280, 288, Appellees' Fed. R. Civ. P. 59(e) Motion and Memorandum, PageID#7756-58; PageID#7905-08). Appellees also moved the court to alter and amend its judgment to include, *inter alia*, pre-

judgment interest. (RE#280, RE#311).  Appellant Akron ("Akron") likewise

moved for JNOV, a new trial and remitter. (RE#283).

## B.    The District Court orders a new trial on damages only

On 9/30/2010, the district court issued an Order upholding the jury verdicts

and liability findings in favor of Appellees, but because "the jury had lost its way

on the issues of damages," it granted "a new trial solely on damages."  (RE#307,

PageID#7971-73; RE#311, PageID#8038-72).  Pursuant to court order, the parties

filed Position Statements on procedure at the damages re-trial, including the

amount of discovery expected and the amount of time necessary to complete

discovery.  (RE#315, Order, PageID#8081).[2]

In their Statement, Appellees' counsel advised that they had "decided to

proceed with the damages trial without using an expert witness on the individual

damages, relying on existing evidence, updated pay records, pension adjustments

and Appellees' own testimony." (RE#323, PageID#8163-64).  Appellees' counsel

did <u>not</u> represent that each Plaintiff would play an equal part in calculating his/her

damages.  All that was needed was a formula to calculate back pay.  Then each

Plaintiff's wage information obtained from Akron's payroll records could be

---

[2] In January 2011, Akron hired several more lawyers, including Attorneys Aretta
Bernard and Karen Adinolfi, of the firm Roetzel and Andress, who appeared to
proceed anew, insisting on additional discovery and again improperly delving into
liability issues, rather than mere damages.  See, *infra.*

inserted into this formula to determine the damages amount for each Plaintiff.

(RE#357, 05/09/11 Conference Tr., PageID#8298).

**C.    Prior to the depositions of Appellees, Appellees advised the district court and Akron that damages were being calculated by using a formula to be applied to all Appellees**

On 4/5/2011, the district court issued an Order scheduling the damages re-

trial for 7/18/2011, which included a discovery cut-off of 6/17/2011.  (RE#326,

PageID#8173-79).  On 5/9/2011, the court asked Appellees to produce the formula

for computing damage in advance of the depositions and ordered Akron to

promptly produce the requested payroll records. (RE#357, 05/09/11 Conference

Tr., Page ID#8295-8302).  Appellees' counsel explained that the damages

calculation involved basic mathematics. "It's basically multiplication, division

addition and subtraction and that's all it is."  *Id.* at ID#8298.

All 23 Appellees were re-deposed, at Akron's insistence, during the first two

weeks of June 2011.  (RE#370-373, Deposition Notices/Transcripts

(PageID#8808-10507].  All agree that during the depositions, Appellees relied on

Plaintiff Gregory Snyder's damage formulations as Snyder was the employee

benefits officer for the Akron Fire Department, and he routinely performed

calculations. (RE#370-2, Exhibit 2, Snyder depo., PageID#8901).  Snyder's

calculations used the average salaries of officers promoted in 2005, from the date

4

of the first promotions off of the promotional eligibility lists. *Id.* at ID#8902, 8926, 8929.

**D.    Prior to the 6/17/2011 discovery cut-off, Appellees advise the District Court and Akron that the damage calculations were being revised based on inquires made by Akron during Appellees' depositions**

Appellees sought, pursuant to a Rule 30(b)(6) motion to depose the individual performing Akron's damages calculations (Mark McLeod).  Akron objected claiming its calculations were privileged and argued that Akron only had to challenge the Appellees' calculations. (RE#357, 05/09/11 Conference Tr., PageID#8295-8302).  The court disagreed and ordered Akron to produce its computations forthwith.[3]  *Id.*

On 6/15.2011, two days before the discovery cut-off date, the district court held another conference.  By this time, 22 out of 23 Appellees had been re-deposed by Akron.  (RE#370-373, Deposition Transcripts, PageID#8808-10507).[4]  During

---

[3] Akron did not produce its calculation witness, McLeod, for deposition until 6/16/2011, one day before the close of discovery.  During his deposition, documents containing McLeod's calculations were delivered to the offices of Thompson & Bishop, the location of the deposition.  Akron's counsel, however, took the documents from Appellee co-counsel Bruce Elfvin before he could read them, claiming the documents contained "errors." McLeod's calculations were not produced by Akron until 7/15/2011, one work day before trial.  (RE#457-2, Declaration of Bruce Elfvin, PageID#11671-73).

[4] Appellees maintained that additional depositions were not needed (RE#359-7), as all 23 Appellees had already been deposed before and Akron also given the opportunity to cross-examine Appellees at the first trial.  Moreover, rather than focusing on damages in its third round of cross-examinations, Akron continually focused on liability, rather than on damages.

this conference, Attorney Thompson informed the court and Akron that the damage calculations were being revised to address inquires made by Akron during the depositions.  (RE#358, 06/15/11 Conf. Tr., PageID#8317, 8322).

Following his deposition, Appellee Carr prepared calculations for back pay by using a model related to questions raised which was tied to each individual Appellee's earnings alone.  These calculations were designed to check Snyder's calculations to determine whether the criticisms raised by Akron during Appellees' depositions had merit. (RE#455-1, Carr depo., PageID#11558, 11564-65, 11569-70, 11574, 11578-79, 11584; RE#469, 07/27/11 Trial Tr., PageID#12852). On 6/17/2011, Carr completed his initial calculations using Appellees' actual pay. (RE#455-1, Carr depo., PageID#11538, 11578, 11630; RE#469, 07/27/11 Trial Tr., PageID#12852).  Appellees produced Carr's damage calculations to Akron on 6/17/2011, the discovery deadline.

**E.    Based on a series of *sua sponte* Orders by the District Court <u>after</u> the 6/17/2011 discovery deadline and immediately before the damages re-trial, Appellees were required to modify their calculation of damages to comply with the District Court's Orders**

The discovery cut-off was 6/17/2011.  Trial was (initially) set for 7/18/2011. The elements needed to calculate the damages were in flux in July 2011, due to the court's conversion to a bench trial, order of promotion (eliminating front pay calculations), and changing the date of the start for back pay from May 2005 to April 2007, the expiration date of the promotional eligibility list. *See, infra.*

6

(1)  On 7/24/2011, after the close of discovery, Akron filed a motion to compel discovery on liability issues. (RE#359, PageID#8346-51).  The district court denied the motion, finding Akron was acting in "bad faith" with respect to damages discovery and sanctioned Akron, noting:

> It is apparent that Defendant refuses to accept that the retrial is on damages only.  The retrial is not a do-over, nor is it an opportunity to reargue liability.***Clearly, the matter was already part of the record and Defendant's motion was a tactic used only to impede both this Court's and Appellees' counsel's ability to prepare for the upcoming trial.

(RE#387, 07/05/11, PageID#10865-66).  Attorney fees and costs were awarded *sua sponte* to Appellees with the court noting it was mostly "symbolic" as Appellees were already entitled to fees as prevailing parties.  *Id.* at ID#10867. Also on 6/24/2011, the Appellees notified the court that they would not be seeking any damages for emotional distress at the forthcoming damages retrial.  (RE#360, PageID#8453-54).

(2)  7/8/2011, ten days prior to trial, the district court *sua sponte* determined that back pay would be determined by the court sitting without a jury. (RE#403, Order, PageID#10937-41).

(3)  At the 7/7/2011 pre-trial conference, the court orally ordered the promotion of the 18 then-currently-employed Appellees.  (RE#404, Conference Tr., PageID #10946-49; RE#416, Order, PageID#11104-06).  As a result of the

promotion Order "back pay will terminate, as a matter of law, no later than July 17, 2011." (*Id.,* Page ID#11106). Also during this conference, the court indicated its inclination to rule on the start date for back pay which would further "narrow the issues" for the damages re-trial. (RE#404, Conference Tr., PageID#10979).

(4) The district court's formal decision on the start date for back pay was not issued until 7/13/2011, only five days before the scheduled trial, even though discovery had closed a month earlier. (RE#416, Order, PageID#11104-08). In its Order, the court determined, for the first time, that the commencement date for back pay was 4/5/2007, thereby reducing the back pay period by two years. *Id.* at 11106-07.[5]

(5) Trial was set to begin in five days on 7/18/2011. The change in the commencement date for back pay required Appellees to present calculations based upon back pay starting on April 5, 2007, not May 16, 2005 which was the date originally used by Appellees. To comply with the 7/13/2011 Order, Appellees had to recalculate the damages for back pay for the fast-approaching retrial date.

Two days after the court issued its Order on the start date of promotions affecting back pay, Appellees provided Akron with supplemental trial exhibits on 7/15/2011, specifically Exhibit 208, a document prepared by Carr to reflect the

---

[5] On 7/21/2011, Appellees filed a "Motion for Reconsideration Regarding Dates for Back Pay." (RE#441,PageID#11399-405). This was denied by the district court via a marginal order on the day of trial, 7/25/2011. (RE#449, PageID#11486).

back pay losses commencing April 5, 2007, replacing Snyder's calculations

relating back to 2005.  (RE#429, Appellees' Amended Exhibit List,

PageID#11282-85; RE#493-1, 498-1, Appellees' Exhibit 208, PageID#13997-

14177; 14445-14625).  On that same date, Akron, for the first time, presented

Appellees with McLeod's calculations. (RE#457-2, Declaration of Bruce Elfvin,

PageID#11671-73).

     (6) In the meantime, Akron appealed the 7/13/2011 promotions Order.

(RE#419, Notice of Appeal, PageID#11115-17).  The bench trial set for 7/18/2011

2011 was delayed to 7/25/2011 while the Sixth Circuit reviewed Akron's motion to

stay the promotions Order. (RE#434, Order, PageID #11342 (CA-11-3752)).

Akron's request for stay on the promotions was denied by all courts.  (RE#443,

07/22/11 Order, PageID#11412-14).

     Appellees then filed a motion to dismiss Akron's appeal. (Doc.

#006111138301).  Akron's opposition brief (Doc. #006111145064, p. 8) stated that

it intended to address the merit-based liability issues, which included " Whether

Appellees presented substantial, probative statistical evidence sufficient to support

a *prima facie* claim of "disparate impact" on Caucasians, on over-[age]40

individuals, and/or on African-Americans."  This Court denied Appellees' motion

to dismiss, stating an appeal under §1292(a)(1) "provides courts of appeal with

jurisdiction to reach the merits, at least where there are no relevant factual disputes

and the matters to be decided are closely related to the interlocutory order being

appealed." (Order, Doc. #006111240522, p. 2). Briefing on that appeal began

before this Court while the lower case continued. The *Howe I* appeal is discussed

*infra.*

**F.     During the back pay retrial, Akron re-deposes Carr but the District Court terminates the deposition due to misconduct by Akron's counsel**

Even though Akron had earlier been ordered to provide its witness'

McLeod's, calculations, Akron not did comply until one day before trial. Akron

then complained it was "surprised" by Carr's calculations, though they were based

on the Order of the district court only days before. To eliminate any potential

"prejudice," the district court permitted Akron's request to re-depose Carr and

Snyder on 7/25/2011, the first day of trial. (RE#448, Order, PageID#11485). The

deposition was strictly limited to the calculation method used by Appellee Carr. *Id.*

In making this decision, the court acknowledged that Appellees could no longer

rely on Appellee Snyder's calculations because back pay would commence on

April 5, 2007. *Id.* at ID#11484-85.

The court also initially ordered that Appellees would be responsible for the

costs associated with Carr's trial deposition and that Akron would be "awarded its

attorneys' fees incurred in preparing for and conducting the deposition." *Id.* at

ID#11485. But after Akron's counsel repeatedly exceeded the scope of the

10

deposition beyond Carr's damages calculation and re-deposing on liability, abusively, the court terminated the deposition and withdrew its prior order that Appellees would be responsible for Akron's attorneys' fees and costs for the deposition; it likewise cancelled the re-deposition of Snyder. (RE#455-1, Carr Tr.Depo., PageID#11608-09, 11653-55; RE#468, Tr., Page ID# 12543-44; RE#530, Order, Page ID#15367).

The court then conducted a *voir dire* of Carr on 7/27/2011. (RE#469, Tr., PageID#12849-76). As Carr testified, once actual promotions were to be made, the necessity to consider front pay disappeared. *Id.* at ID#12859-61. Carr also explained that the change in commencement date resulted in his creation of two exhibits for each start date. *Id.* at 12860-61. The changes were made to comply with the court's own belated Order.

In their case in chief, Appellees called Akron's then-employee, Mark McLeod, as on cross-examination. He admitted to errors in his calculations (which had not been given to Appellees until one work day before trial); thus, Appellees had no time to depose him on the actual calculation documents. Appellees made the court aware of this misconduct by Akron. After testimony by McLeod and the Appellees (including cross-examinations by Akron), and exhibit proffers, Appellees rested their case. (RE#467-470, Tr., PageID#12470-13158).

In its oral motion for judgment under Rule 52, Akron attacked Appellees as having engaged in an alleged "bait and switch" based on new calculations because of the court's order just days before trial, changing the backpay date by two years; Akron offered nothing related to substantive argument on back pay. (RE#470, Tr. 668-672, 07/28/11).

**G.    The District Court excludes Appellees' Exhibit 208 as a sanction and improperly imposes excessive monetary sanctions against Appellees' counsel**

On 7/28/2011, the district court, as another sanction, excluded Appellees' PX 208 (Carr's calculations) and all testimony given in reliance on it. (RE#470, Tr., PageID#13119-32).  Two reasons were given.  First, the court erroneously believed that the simple mathematical calculations could only be performed by an "expert witness," although Appellees had given a formula for calculations in 2009 in their motion to alter or amend on the first trial (RE#280), and noted that courts in bench trials had handled such equitable remedies themselves with ease.  Second, the district court clamped onto Akron's "bait and switch" accusation by allegedly "baiting" Akron "into conducting discovery on Snyder's calculations" and then "changed their methodology" of calculations by relying on Carr's calculations after all 23 Appellees had been deposed. (RE#484, Order, PageID#13407-18).

Despite all their efforts to provide the most current and accurate calculations in compliance with the court's order of 7/13/2011 changing the back pay date, the

court sanctioned Appellees' counsel and *sua sponte* ordered them to "deposit" $200,000 into the court's registry without a hearing. (RE#476).[6]  Appellees protested, and the court cut the monetary "sanctions" in half, awarding Akron attorney fees and costs totaling $97,056.18. (RE#530, Order, PageID#15368-69). This was appealed by Appellees.  (CA No. 12-4262).  Appellees also timely proffered PX208 Carr's calculations and Carr's testimony at the retrial.

**H.    Continuation of the Damages Retrial 14 months later; Order on FFCL**

The lower case on damages languished another 15 months until the district court ordered Akron to establish its defense.  Akron had originally claimed it intended to produce damages witnesses, but five days before trial, it announced it would not present witnesses, again throwing off Appellees' trial preparation for Akron's defense presentation. (RE#552).  Thus, Akron rested without offering any defense or damage calculations and instead again relied solely on an alleged and false "bait and switch" by Appellees. (RE#565, Tr., PageID#15881-83).

On 8/30/2013, the District Court issued "Findings of Fact and Conclusions of Law" ("FFCL") with respect to the damages retrial, awarding approximately

_____

[6] On 8/1/2011, Akron provided generalized monthly invoices with no accounting for fees. (RE#471). When Appellees, protested finding that the Akron attorneys Roetzel & Andress had only contracted with Akron for $50,000 for their representation at the damages trial (RE#460, 461), Akron immediately issued a "new" contract for $200,000 for Roetzel and Andress' representation of Akron.

$600,000 based on McLeod's testimony in Appellees' case-in-chief. (RE#588, PageID#16479-9).

## I.    *Howe I* Decision by this Court (Case No. 11-3751)

In the primary appellate briefing on Akron's interlocutory appeal on promotions, Akron asserted that it was challenging the "merits" of the disparate impact case, but then proceeded to focus on the prima facie case. *Howe v. City of Akron*, 723 F.3d 651, 658 (6th Cir. 2012) (*Howe I*) ("[Akron] presents two objections to the preliminary injunction ordering promotions: (1) there is insufficient evidence to support a prima facie case of disparate impact liability…). In supporting its arguments as to liability, Akron argued that "Plaintiffs failed to show "a substantial likelihood of the adverse impact finding being upheld." *Id.*

Akron argued solely on the merits of liability.  Pertinent to its argument regarding the prima facie case, Akron argued that the promotion rates were "an altogether inappropriate metric" for determining adverse impact, that the Appellees had not identified a specific employment practice, and that the Appellees had not shown that Akron was the "unusual employer who discriminates against the majority." *Howe I* at 660.  Though the appeal was allegedly on the "merits" of the case, Akron presented no other arguments and nothing in support of its burden of proof as a defendant.

14

After considering Akron's arguments fully, this Court affirmed the district court's promotions of the Appellees in a reported decision.  *Howe I* (RE#584-1, PageID#16442-58).

Akron then filed a petition for review *en banc*.  After requested briefing letters by both parties, this Court denied Akron's petition.  (Doc.#006111841276).[7]

## J.    Subsequent appeals to this Court: *Howe II* and Appellees' Motion for Reconsideration of Sanctions in the district court

### 1.    This Court's *Howe II*  decision on sanctions (Case No. 12-4262)

On 10/19/2012, during the *Howe I* appeal, Appellees and their counsel filed a separate appeal to this Court from the sanctions Order. (RE#543,PageID#15451-55) ("*Howe II"*).  The appeal was fully briefed and orally argued.  Afterward, this Court concluded it did not yet have jurisdiction to hear the appeal, but also carried a concurring opinion by Judge Gilman, which described the sanctions as unfair. *Howe v. City of Akron*, 557 Fed. Appx. 402 (6th Cir. 2014).

### 2.    Appellee's Motion for Reconsideration on the Sanctions Order is Granted in part

On 2/27/2014, Appellees filed a Motion for Reconsideration on Sanctions and for Stay in the district court based on this Court's finding of lack of

---

[7] Akron later filed its brief in the instant appeals on backpay and prospective relief,  yet again trying to return to the merits of the case by re-iterating the same arguments already raised and rejected by this Court, as well as raising a couple of arguments it could have (and should have) raised but did not raise in *Howe I*.

jurisdiction. (RE#619,620). Meanwhile the other appeals concerning this consolidated appeal were pending.

The district court rescinded the sanctions monetary order against Appellees on 9/30/2014. (RE#722, PageID # 18050-54). In so doing, however, the Court issued a warning:

> In lieu of adhering to its current monetary sanction, the Court will take into account Plaintiffs' counsel's conduct as well as Defendant's counsel's conduct when determining the proper amount of fees to award. As such, the monetary sanction levied in the Court's prior order (Doc. 530) is hereby VACATED. The conduct, however, will remain under the Court's consideration when it evaluates attorney fees in this matter. (*Id,* PageID#18053).

Thus, under the court's implicit warning, Appellees expect that the sanctions will be deducted from their attorney fee award, still proceeding; it amounts, in essence to a sanction-ruse by the court. Moreover, the court did not reinstate Carr's calculations or PX 208, also a continuing sanction against Appellees. *Id.*

## II.    STATEMENT OF THE FACTS

### A.    Akron Administered Discriminatory Promotional Examinations Remedied in Part with Back Pay

Akron's Fire Department (AFD) administered promotional examinations for the ranks of Lieutenant and Captain in December 2004, that were found by the jury and trial court to have discriminated against the Appellees based on race and age. (RE#277, FFCL). Over the two-year life of the eligibility lists, certified by the Civil Service Commission on April 4, 2005, 28 persons were promoted to

16

Lieutenant, and 12 were promoted to Captain. [*Id.*].  The first promotions for both positions occurred on 5/16/2005, and the last promotion for each position occurred on 4/6/2007.  (RE#441-4, PageID#11409; RE#444-5, PageID#11410).

## B.  The basic formula involved the amount of Appellees' wages obtained from Akron multiplied by the period of back pay

Appellees presented two alternative methods for calculating back pay. (RE#448, Order, PageID#11482-83; RE#484, Order, PageID#13411).  The first approach, performed by Appellee Snyder, compared each Appellee's actual pay with the average pay of firefighters that were promoted in May 2005 ("comparative methodology").

The second approach, performed by Appellee Carr, involved Appellees' actual weekly pay grossed up with the pertinent step increases ("gross-up methodology").  (RE#448, Order, PageID#11482-83).

During the June 2011 depositions, Appellees relied on Snyder's damage calculations. (RE#370-373, Notices, Deposition Transcripts, PageID#8808-10507), but also spent a considerable amount of time attempting to return to liability, though the retrial was "solely on back pay."  The completion of the depositions of Appellees in June 2011 did not require any change in trial strategy.  Appellee Carr's calculations were simply designed to check Snyder's calculations to determine whether the criticisms raised by Akron during Appellees' depositions had merit. (RE#455-1, Carr depo., PageID#11558, 11564-65, 11569-70, 11574,

11578-79, 11584; RE#469, Trial Tr., PageID#12852). The calculations Carr

provided at the close of discovery were not initially intended to have any role at

trial. (RE#455-1, Carr depo., PageID#11537-42; RE#469, Trial Tr.,

PageID#12855).

This changed following the 7/7/11 pre-trial conference and issuance of the

7/13/11 formal Order where the district court ordered the promotion of 18

Appellees and determined that April 5, 2007 – and not May 2005 -- was the start

date for back pay. (RE#416, Order, PageID#11104-08). Once the court determined

that back pay commenced on April 5, 2007, the comparative methodology relied

upon by Snyder could not be used. Any further reliance on Snyder's calculations

would have overstated the back pay losses, a fact acknowledged by the court:

> Snyder's formula became unworkable when this Court ordered that back pay
> would commence on April 5, 2007. Doc. 448 at 3-4. The use of Snyder's
> formula was dependent upon the ability to compare Plaintiffs with
> firefighters that were promoted in 2005. As this Court found that back pay
> would not stretch back to 2005, Snyder's formula would dramatically
> overstate the back pay under the law of this case. (RE#484, Order,
> PageID#13411-12; *see also* RE#448, Order, PageID#11484-85).

To comply with the court's 7/13/2011 Order and provide the most accurate

estimate of back pay damages, Appellees had to recalculate the damages using the

"gross up methodology" performed by Carr.

In essence, Carr explained that the calculation of damages would have to be

adjusted to remove front pay, account for pay step on promotion and to comply

18

with the changes to the commencement date for back pay. (RE#469, Trial Tr., PageID#12849-76).  Most importantly, when questioned by the court during *voir dire*, Carr stated that the method for calculating damages did <u>not</u> change from that of Snyder's except for the orders by the court immediately preceding the retrial on damages; the methods were the same. (RE#469, Trial Tr., PageID#12858).

To calculate the amount of back pay due, the following information was used:  (1) the amount each Appellee earned during the period of back pay; and (2) the step increase each Appellee, upon promotion, would have earned.  [RE#493-1 and 498-1, Exhibit 208, Page ID#13997-14177; 14445-14625].

The change in the commencement date for back pay made it necessary to create PX 208. (RE#416, Order, Page ID#11104-08).  Carr started working on PX 208 after the District Court announced that the commencement date for back pay was April 5, 2007. (RE#455-1, Carr depo., PageID#11615).  Each Appellee also reviewed PX (Plaintiffs Exhibit) 208 and checked the calculations, and testified as such. (*Id.* at ID#11614, 11637-40).  Because the calculations were simple mathematics based on Akron's records and the collective bargaining agreement, neither Carr nor Snyder could be considered "experts."  See *Howe II*, 557 Fed. Appx. 406 (concurrence Gilman, J., emphasis added) ("But the computation of damages in this case does not appear to require anything more sophisticated than the underlying payroll data, a grasp of arithmetic, and an Excel spreadsheet. The

19

relative ease with which damages can be calculated is best evidenced by the fact that <u>two non-experts, Snyder and Carr</u>, devised the competing methods for calculating them.").[8]

### C.    Appellees' PX 208 reflects the same method of calculations previously suggested by Plaintiffs in 2009

PX 208 contained the same method of calculation Appellees presented to the District Court nearly two years earlier in their Fed.R.Civ.P. 59(e) Motion. (RE#280, Fed.R.Civ.P. 59(e) Motion, PageID#7756-58; RE#288, Memorandum in Support, PageID#7905-08).  Appellees set forth how back pay damages should be computed starting with a commencement date of May 5, 2005. *Id.*  The only difference is that in PX 208, Carr used actual weekly payroll information for each Appellee as opposed to base pay rates from 2005, which had been obtained during discovery of the case as ordered by the district court.  Exhibit 208 also incorporated updated information made necessary due to the passage of 2½ years from the original jury verdict to the damages re-trial.  All information and payroll data used to compute back pay damages came from Akron.  Afterwards, it was a matter of inserting the numbers into the formula to calculate back pay losses – this was simple arithmetic involving no special expertise.

---

[8] However, the methods were not in "competition," but in conformity with one another, only to reflect the belated change in service date, as set forth below.

The basic formula for calculating the damages never changed.  In creating PX 208, Appellees and Appellees' counsel were complying with the 7/13/2011 Order by recalculating the damages for back pay for the fast approaching re-trial. No "bait-and-switch" scheme was ever conceived, nor did Appellees benefit from the purported scheme.

## D.    Step increases upon promotion

AFD utilizes a "Salary Plan" that is effective through the collective bargaining agreement with the firefighter Union. (RE#467, Tr. 26-27).  The Salary Plan has different pay grades for each rank, such as "81" for Lieutenant and "82" for Captain. (RE#467, Tr. 27).  Under the Salary Plan, the pay grades for a Lieutenant and/or a Captain upon promotion start at Step 4 (the entry level step for these positions).  (*Id.*).  After being in rank for one year, a promoted Lieutenant or Captain will advance to Step 5 of the Salary Plan; after two years in rank, he or she will be promoted to Step 6 (the top step). (RE#467, Tr. 28-29).  Hence, the promotional wages increases are "stepped in" over a three-year period, and are referred to "step increases." (RE#736-1, Tr. Exh. 1117[9], PageID#18730-32).

## E.    Interest post-judgment only

Although the District Court, in its initial judgment entry, ordered "that plaintiffs shall receive post-judgment interest from the date of the within judgment

---

[9] Akron's Exhibit 1117 was offered and admitted during the damages retrial. (RE#470, Tr. 643, 666).

pursuant to 28 U.S.C. § 1961," (RE#278), when that judgment was subsequently vacated and a new trial on damages ordered, the ultimate award of back pay was silent as to post-judgment interest. (RE#588, FFCL, PageID#16749-90). It was also silent as to pre-judgment interest, despite the court's proclamation that it would "take up" the request made by Plaintiffs in RE 280 "at the new trial on damages." (RE#311). Because the court's findings from the damages retrial were silent on interest, Appellees have included the matter as an issue in this appeal as well as separately moving the district court on February 19, 2014. (See, RE#613, Appellees' motion for pre- and post-judgment interest – filed pursuant to RE#608).

## III.    STANDARDS OF REVIEW

This Court reviews back pay awards for an abuse of discretion. *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251 (6th Cir.1989). Legal issues are reviewed *de novo.* Factual issues involving bench trials are generally viewed as on an erroneous standard; this case had an advisory jury but also a district judge who passed on all of the jury's findings and also had his own FFCL.

## IV.    SUMMARY OF ARGUMENTS ON CONSOLIDATED APPEALS

### A.    Summary of Argument on Appeal Nos. 13-4172 and 14-3352 (Appellant's Pending Appeals on Backpay and Prospective Relief)

<u>First,</u> Although Akron already has a reported decision on the merits of this case (*Howe I*), in which it raised all of the arguments that it chose to use on the

merits of liability, Akron again has improperly attempted to re-litigate the merits a third time. It is undisputed that both a jury and a district court judge found in favor of Appellees on liability/merits. It is likewise undisputed that the district court ordered a retrial on damages only, without objection by Akron.

Despite this Court's disposition on the merits in *Howe I,* Akron insists on attempting to re-litigate them yet again, yet it has declined to re-address the promotions, now made final by RE# 588, Order for Prospective Relief/Monitor. Thus, it has waived its merits arguments as a matter of law, all of which it should have brought up in *Howe I*, if they were to be addressed at all.

Second, Akron's appeals and their consolidated appellate briefing do not conform to the Rules of Appellate Procedure, notably Fed. App. R.P. 3(c). Akron's notices of appeals were unspecific as to any questions of liability. Yet, in its appellate brief Akron returned yet again to "liability," trying a few more angles and was suddenly able to point out specific orders not identified in its Notices of Appeal. Under the law, the failure to put forth all of the order appealed from is not only waiver, but divests this Court of jurisdiction to hear them. Thus, no appeal has been preserved on liability. For example, Akron never discussed the N+1 (opr "N-of-1) rule at any stage in opposing the jury's or the court's findings, as well as *Howe I*. Rather Akron in *Howe I* embraced the EEOC 4/5ths Rule, but attempted to apply it to pass rates, rather than promotion rates. Again, this Court in *Howe I*

23

found in favor of Appellees on this legal issue.  Moreover, Akron failed to re-appeal this Court's and the lower court's order on promotions.

Thus, Akron's arguments on small sample size are waived, and likewise were declined by the factfinders in this case.  Akron's attempt to re-argue "heightened scrutiny" for Caucasians is likewise still waived (as *Howe I* found); further, it is already decided in a legal opinion (*Howe I*); and finally, it is an affront to controlling law and an imposition on racial equality under the Fourteenth Amendment of the Constitution as well as 42 U.S.C.2000e-2, et seq., including Subsec.(k).

Akron's belated and diaphanous appeals on liability, including promotions, are completely waived.

Third, Akron's arguments in its appellate brief on the permanent injunction imposing prospective relief are likewise inapposite.  Aside from the fact that Akron again attempts to return to liability, this already has been decided as a matter of law.  The prospective relief ordered by the district court, as shown in this brief, was appropriate and narrowly tailored on "one cycle" of the promotional process. In addition, as pointed out in the substance of this brief and the record, Akron has proved that it cannot be trusted to determine its next promotional cycle without court intervention.  Indeed, Akron has several times flouted the court's orders and in the meantime has secretly engaged in separate promotional process meetings

with a non-party, while simultaneously discussing a testing procedure with the appointed Court Monitor and both Appellees' and Akron's experts. This not only comprises contempt of court but bypasses the purpose of the order on injunctive relief (that Appellees were to have a say) and attempts to undo all the hard work the parties and the Monitor have engaged in since the order of prospective relief; moreover an entity not a part of this litigation is not afforded the right to utilize the Monitor, which is not within a non-parties' jurisdiction.

What remains are the appeal on backpay and the attendant Appellees' cross-appeal on backpay, and Appellees' appeal on sanctions, now partially rescinded (in all monetary damages, but not exclusion of relevant testimony) by the district court.

## B. Summary of Argument on Akron's appeal on backpay and Appellees' cross-appeal on same, Case Nos. 13-4172 and 13-4268

Appellant Akron has laid out its alleged issues for appeal. In essence Akron argues that backpay is not available and that its own witness, Mark McLeod's, backpay calculations are inadmissible. When offered its chance to put on its portion of the damages retrial 14 months after the conclusion of Appellees' case, Akron bailed and rested its case solely on purported "sanctions" against Appellees' counsel, which have now been rescinded (in part, monetarily but not in terms of exhibits and testimony) by the district court, and redundant exhibits already passed

on.  As such, Akron has no defense in the record for its damages portion of the retrial.

**C.    Summary of Arguments on the Sanctions Appeal by Appellees, CA 13-4268 combined with CA 13-4268 (Backpay cross-appeal)**

Although the Sixth Circuit dismissed the first sanctions appeal for lack of jurisdiction, Judge Gilman authored a concurring opinion that addressed the merits to express "[his] doubts regarding the propriety of the sanctions order" and concludes that the sanctions award "was an unjustified overreaction by the district court." (RE#609, Sixth Circuit Opinion, Case No. 12-4262, Page ID#16637-16639).  Upon reflection and with the benefit of Judge Gilman's concurring opinion, the district court recently granted Plaintiffs' counsel's motion for reconsideration and vacated the sanctions order on September 30, 2014.  (RE# 722, Order, Page ID#18050-18054.) Given this event, this Court should either reverse the September 24, 2012 sanctions Orders, or alternatively, remand the case with instructions to the district court to re-enter its Order of 9/30/2014.[10]

**V.    LAW AND ARGUMENT**

Because this appeal comprises four separate consolidated appeals, Appellees have broken down their arguments on response to Akron's appeals on backpay and

---

[10] Given this occurrence so late in the case, Appellees are confused as to whom has jurisdiction.  Thus, they are pursuing this appeal as a precautionary measure.  Their motion before this Court to hold the sanctions brief in abeyance has not been ruled on to date; thus, it is incorporated here.

prospective relief, Appellees' cross-appeal on backpay, and Appellees' appeal

sanctions into separate sections; the first section deals with Akron's attempt to

relitigate liability (CA No. 13-4172) and the prospective relief appeal; the second

section deals with both Akron's appeal on backpay and Appellee's cross-appeal on

backpay (CA Nos. 13-4172 and 13-4268); the third section deals with the appeal

(now in question on jurisdiction) on the overwrought 2011 sanctions against

Appellees and their counsel. (CA No. 13-4268, Appellees' Appeal on Sanctions,

now combined with backpay Appeal, due to the fact that this Court declined

jurisdiction on the original sanctions appeal).

## A.    Akron's Appeals On Damages, Doc.# 59, Case Nos. 13-4172 and 14-3352

## 1.    Akron Waives Its Attempt to Return to Liability; there is no jurisdiction of this Court over the liability issues because it was not preserved on appeal.

The Federal Rules of Appellate Procedure are clear:  An appellant can only

file and argue briefs that relate to its pending notices of appeal.  See Fed Rule App

Proc R 3(c)(B) (appeal must "designate the judgment, order, or part thereof being

appealed[.]").  In other words, the appeal and orders being appealed must be

specific for notice purposes.

Appellant Akron has two pending appeals, both relating solely to judgments

and orders on the damages retrial, and not to liability; these appeals have been

consolidated with two other appeals (one, a cross-appeal on back pay by

27

Appellees, and another, by Appellees on unwarranted sanctions during the
damages trial relating solely to calculations of damages).[11]

### a.    Akron's Backpay Appeal (Case No. 13-4172)

In its appeal on the award of the back pay amount  (RE#590,
PageID#16494), Akron declared that it "hereby appeals…from (1) the Findings of
Fact and Conclusions of Law[FFCL]...(Doc#588)…(2) the Order filed September
4, 2013 (Doc 589) denying Akron's renewed motion for judgment under Civil Rule
52(c) and (3) "interlocutory orders that issued prior to August 30, 2013 and are
merged into the August 30, 2013 [FFCL]." Part three of this Notice in unspecific;
but Akron apparently now is trying to use it as a license to go back to the dawn of
time of this nearly 10-year-old case, as set forth in its rambling, confusing prose on
page 2 of its brief, where it now discusses specific orders including on the 2008
jury verdict, yet these were not specifically set out in the Notice of Appeal.[12]

---

[11] Appellees have asked to hold the consolidated briefing on sanctions in abeyance
because the District Court reversed itself on the issuance of sanctions against
Appellees and withdrew its previous orders on that issue.  The question remains
where the jurisdiction on sanctions lies – forming the purpose of the pending
Motion for abeyance on briefing before this Court on the now-rescinded sanctions
against Appellees during the damages retrial.

[12] Specifically, Akron now professes to be appealing orders 278, 237, 277, 311,
390, 643 and 644.  It did not put either the Court or the Appellees on notice that it
intended to re-appeal these specific orders. See RE#590.

28

Akron's Memorandum in Support of its Rule 52(c) motion following the

damages trial is RE#499.  The entire memorandum deals solely with backpay

damages; there is no mention of liability.  The district court's FFCL appealed on

by Akron dealt solely with the damages trial, and not liability.  (RE#588).  Thus,

no issue of liability has been preserved in that appeal. On cannot simply "merge"

unspecified orders in a notice under Rule 3. See *United States v. Glover*, 242 F.3d

333, 336-7 (6th Cir. 2001) (some citations omitted and emphasis added):

> Rule 3(c) has two essential purposes. First, as frequently recognized by this
> Court, the rule is "sufficiently critical in avoiding **inconsistency, vagueness
> and an unnecessary multiplication of litigation.**" Second, Rule 3(c) serves
> to satisfy due process concerns by "ensuring that the filing provides
> sufficient notice to other parties and the courts."***In this case, no amount
> of liberal construction of the Rules can show that the Government's notice of
> appeal complied with the requirements of Rule 3(c). To file a "notice that the
> United States . . . hereby requests a Protective Notice of  Appeal in
> this Matter" **provides not even a clue** as to what [is sought] on appeal. We
> refuse to interpret so as to invent the legal strategy of a litigant and conclude
> that this appeal must be dismissed for lack of jurisdiction.…Because the
> Government failed to designate in its notice of appeal "the judgment, order,
> or part thereof being appealed," we DISMISS the Government's appeal for
> lack of jurisdiction.

> *See, also, JGR, Inc. v. Thomasville Furniture Indus*., 550 F.3d 529, 532 (6th

Cir. 2008) (emphasis added and quoted citations omitted):

> [A] court of appeals **has jurisdiction only over the areas of a
> judgment specified in the notice of appeal as being appealed.…The law-
> of-the case doctrine bars challenges to a decision made at a previous
> stage of litigation which could have been challenged in a prior appeal,
> but were not."** Finally, when a judgment or order describes several different
> types of damages, but the notice of appeal specifies only a part of the

judgment or order, the Court considers only the types of damages described in the notice of appeal.

*See, also, Chandler v. Crews*, 503 Fed. Appx. 343, 345 (6th Cir. 2012) ("The law-of-the case doctrine bars challenges to a decision made at a previous stage of litigation which could have been challenged in a prior appeal, but were not."); *Sutter v. U.S. Nat'l Bank (In re Sutter)*, 665 F.3d 722, 727 (6th Cir. 2012) ("To the extent that this was an improper consideration by the district court, the Appellants should have appealed that ruling to this court. Failure to do so bars later attempts to raise the issue.")

### b.    Akron's Second Appeal on Injunction (Case No. 14-3352)

Like the backpay appeal, Akron's Notice of Appeal from the permanent injunctive relief ordered by the district court dealt solely with the permanent injunction and the order of appointment of a Court Monitor. (RE#654). In that Notice, Akron limited its appeal by stating only that it "is related to *Howe v. City of Akron,* 6th Circuit Appeal Nos. 13-4172 (its backpay appeal) and 13-4268 (Appellees' Cross-Appeal on backpay). Thus, no issue of "liability" has been preserved in Akron's second appeal.

In short, neither Notice of Appeal relates back to any finding or order on liability or Akron's "interlocutory" appeal (Case No. 11-3752) appeal on promotions, in which Akron professed to address liability in its entirety.

30

The alleged lack of merits on the prima facie case already has been raised by Akron, allegedly in its entirety, appealed to this Court, and denied in 2013, just as they were previously denied by the district court.  See *Howe v. City of Akron,* 723 F.3d 651 (6th Cir. 2013) ["*Howe I*"]; *See, also, Howe v. City of Akron,* 789 F.Supp.2d 786(2010) (district court order denying Akron's liability arguments, discussing the 4/5ths rule, and ordering a new trial on damages only). [13]

Also, it must be noted that, although Akron had requested an entire new trial in its post-trial motion under Rule 50, it did not object when the district court denied a new trial and ordered a limited retrial on damages only.  Hence, no objections were preserved by Akron as to the limitation of retrial solely on damages, nor was Akron given the right to endlessly continue to return to liability with theories not raised in its first, "interlocutory" appeal.  These issues are *waived* and the portions of Akron's appellate brief dealing with specific orders not appealed should be ignored or dismissed as inoperative and without jurisdiction.

In sum, Akron is improperly overreaching by trying to take a second bite of a no-longer-existing liability apple.

c.    *HOWE I* **Decides the Merits on Liability**

---

[13] Indeed, the district court numerous time admonished Akron for improperly attempting to return to liability after the merits trial was concluded. This was likewise noted by Judge Gilman in his concurring opinion in *Howe II, supra.*

In both its initial interlocutory appellant brief and its Reply in *Howe I*, Akron ardently argued that <u>all</u> of the merits had to be looked at by the Court, relying on *Grant v. Metro Gov't. of Nashville,* 446 F. Appx. 737 (6th Cir. 2011). In its brief on the "merits" of liability on the prima facie case, Akron focused on several factors: 1) Akron embraced the 4/5ths Rule, but argued that it should have been applied to test passing rates, rather than actual rates of promotions; 2) Akron argued that Appellees failed to set forth a prima facie case because they could not challenge the promotional process as a whole under Title VII; and 3) Akron declared that "heightened scrutiny" was required for race discrimination disparate-impact claims against Caucasian candidates.  These comprise Akron's arguments, in which it claimed to be <u>fully argued</u> on the merits.

In *Howe I,* this Court boiled down the arguments as such:

> On interlocutory appeal, the City presents two objections to the preliminary injunction ordering promotions: (1) there is insufficient evidence to support a prima facie case of disparate impact liability; and (2) even if there is sufficient evidence for a prima facie case the district court abused its discretion in issuing the injunction.  (*Howe I* at 657).

Akron's appeal on the merits was denied in its entirety by a unanimous Court.  Akron's attempt at *en banc* review was likewise rejected, ending in the *Howe I* reported decision.  In that decision this Court specifically found against the liability arguments of Akron on the prima facie case and arguments raised (which

Akron proclaimed to have been complete), finding a likelihood of success on the merits.

First, the Court recognized and rejected Akron's argument that the EEOC 4/5ths rule must apply to passing rates. Rather, the Court held it belongs in this situation to promotional rates – a legal and binding conclusion. (*Howe I* at 659).

Second, the Court recognized that the 4/5ths Rule "of thumb" was not dispositive but "may be used to demonstrate the adverse-effect of a disparate-impact claim." (*Howe I* at 659). This is a legal finding. The Court discussed other issues regarding the 4/5ths Rule, which Akron continually argued in favor of; the Court noted "The City does not dispute that African-American candidates and candidates over the age of forty [met the 4/5ths rule on promotions]." The Court also discussed potential clustering of scores at the bottom end, which occurred in this case on proved and as yet undisputed invalid testing and promotions of Plaintiff candidates. (*Howe I* at 660).

Third, the Court found that Plaintiffs/Appellees' claims had properly encompassed the "promotional process as a whole," thus likewise dispensing with this merits argument by Akron. (*Howe I* at 659).

Fourth, the Court held that "heightened scrutiny" of White candidates versus Black candidates does not apply in disparate-impact cases, but only (if at all) in disparate treatment cases. (*Howe I* at 661). Indeed, the Court found that Akron

had waived that argument, but, in any event, it was not applicable to this case, because such "heightened scrutiny" does not apply to disparate impact cases.  (*Id.*). This was an issue purely of law, and Appellant's *en banc* bleat was denied.

Fifth, the Court recognized that promotions were in rank order.  (*Howe I* at 656, 659).  As such, the Court found, as a matter of law, there was no "loss of chance" argument available to Akron, though it tried to forward this argument; such promotions are binary, according to the Court and "loss of chance" does not apply.  This is likewise a legal conclusion.  The Court also found that the Akron failed to point to any contrary evidence in the record that one Plaintiff was better than any other in terms of rank-ordering off of promotional tests.  (*Id.*).[14]

There is no question that Akron argued to this Court in *Howe I,* that the appeal was focused on all the merits of the prima facie case.  Akron did not specifically argue small sample sizes or argue at all against the EEOC's 4/5ths Rule; indeed, it appeared to embrace the Rule, but only as to passing and not promotion rates.  (Docs. 006111285227 and 006111421282).

Yet, Akron's latest appellate brief (RE#59, Appellate Case 13-4172 (consolidated)) goes entirely back to liability re-arguing other theories already passed on in legal determinations in a reported decision, with an *en banc* denial.

---

[14] Notably, for all its discussion of the merits, Akron has never once argued that its promotional process was valid or that the district court's and jury's findings were invalid – Akron's burden of proof.

34

To wit: Akron again (ignoring this Court's reported decision) asserts that "heightened scrutiny" applies to Caucasian plaintiffs. It also attempts to re-argue the "loss of chance" argument likewise previously decided by this Court, nor have such arguments been preserved under Fed.R.App. P (3)(c). No additional record evidence has been shown by Akron as the moving party. Thus, such arguments are not only meritless, but contrary to the law of the case and controlling law in this Circuit.

      **d.** *Howe I's* **Findings Control on Liability; Akron has waived any argument as to its own burden of proof of job-relatedness and business necessity.**

This case is unusual in that a liability trial was already held and all post-trial briefing finished when a retrial *solely on damages* and not liability was ordered. Akron argued to this Court in *Howe I*, using *Grant v. Metro, supra,* that the order of promotions in 2011 (days before the damages hearing) required a look at the entirety of the merits of the case on liability.

In *Howe I,* this Court characterized the district court's ordering of the promotions of the Appellees as a "preliminary injunction." The order of promotions was analogous to a preliminary injunction in the sense that it was ordered before the district court entered final judgment in this case. However, the order of promotions in this case occurred *after* the trial on the merits and the entering of judgment based upon the jury verdicts. *Howe I* at 656-657. In this

respect, the order of promotions was more like a permanent injunction, and indeed, has become one -- on which Akron has <u>not</u> preserved for appeal. *See, supra,* Notices of Appeal.[15]

This distinction is significant.

Most preliminary injunctions function somewhat as a temporary restraining order prior to or during a pretrial act is being pursued by a party.[16]

According to *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981):

…a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing[.]

*Id.* (citations omitted). Generally, when considering a preliminary injunction, the district court needs go no further than to decide the "probable outcome, that is, "to make an informed (but nonbinding) prophecy as to plaintiff's "likelihood of success" at an ensuing trial on the merits." *Goyco De Maldonado v. Rivera*, 849 F.2d 683, 686 (1st Cir. 1988).

---

[15] This additional lack of appellate preservation precludes Akron from arguing against the promotions <u>and merits</u> at this stage; as a consequence, *Howe I* is final and liability disappears from the picture entirely.

[16] For example, Appellees originally sought to halt the promotions being made by Akron in 2006 in state court. Akron argued against it, stating: "There is no harm at the firefighters can identify that cannot be adequately remedied <u>if</u> they ever prevail on the merits of the claims. The equitable powers of the court can make them whole. **An examination of the relief sought by Plaintiffs confirm [sic] that complete relief is available to all candidates**." (RE#271,Appellant Ex.1, PageID#7709-10, emphasis added).

In cases where there has already been a trial, however, the usual restraints pertaining to the rule -- that a court of appeals should ordinarily limit its review to the narrow question of whether the district court abused its discretion in issuing the interlocutory injunction, intruding into the merits of the case only to the extent necessary to decide that issue -- are not present. *Alexander v. Aero Lodge 735*, 565 F.2d 1364, 1371 (6th Cir. 1977). (citations omitted). This is because the probable outcomes of substantial likelihood of success on the merits are already determined, *i.e.* verdicts and a district court's judgment on all of the evidence presented at trial.

Moreover, the rule is "one of orderly judicial administration and not a limit on jurisdictional power." *Curran, v. Merrill, Lynch, Pierce, Fenner & Smith, Inc*., 622 F.2d 216, 230 (1980) n.17, citing *Alexander*, 565 F.2d at 1370. As this Court stated in *Alexander*:

> Such self-restraints, which are normally highly desirable in interlocutory appeals, are less attractive where, as here, the case is one of long standing, has already been tried on the merits, and where most of the issues are clearly defined. It is generally recognized that a court possesses the jurisdictional power on the appeal of an interlocutory order containing injunctive relief to reach and decide other aspects of the order which would not be independently reviewable by interlocutory appeal….A court should not close its eyes to what is plainly there.

(*Id.*) at 1371. (Citations omitted).

Akron knew what the post-trial and judgment posture of this case when it exhorted this Court in *Howe I* to reach the merits of the case to address its arguments as to the propriety of the district court's order of the promotions in

*Howe I.*  Akron specifically objected that there was "insufficient evidence to support a prima facie case of disparate impact liability." *Howe I,* at 658.   At that time, Akron put forth all of its arguments "on the merits" relying on *Grant v. Metro, supra.*  There was a well-developed record that include a three-week trial wherein four expert witnesses testified as well as dozens of other witnesses; the record also comprised a voluminous number of exhibits.

Moreover, Akron raised the issue of small population numbers as precluding a finding that the Appellees could not establish a prima facie case at the district court, so it is not that this argument somehow was hidden from view or obscure. Instead, Akron eschewed its arguments in *Howe I* as to small population sizes and placed all its marbles regarding the prima facie case in the "pass rate versus promotion rate" bag, expressly relying on the 4/5ths Rule.

  **e.** **Because Akron failed to raise its full prima facie objections before the Court in the first instance, Law of the Case and Waiver doctrines prevent it from doing so now.**

"The law-of-the-case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages in the same case.'" *Medical Center Pharmacy v. Holder*, 634 F.3d 830 (5th Cir. 2011) (citations omitted).  The court went on:

> This rule, however, is qualified by the waiver doctrine, which holds that an issue that could have been but was *not* raised on appeal [on the merits] is forfeited and may not be revisited by the district court on remand. "[T]he rule bars litigation of issues decided by the district court but foregone  on

appeal or otherwise waived….[I]ssues not arising out of this court's ruling [on appeal] and not raised in the appeals court, which could have been brought in the original appeal, are not proper for reconsideration by the district court below."

The waiver doctrine, like the law-of-the-case doctrine, "serves judicial economy by forcing parties to raise issues whose resolution might spare the court and parties later rounds of remands and appeals." But it "differs from the law-of-the-case doctrine in that it arises as a consequence of a party's inaction, not as a consequence of a decision on our part."

*Id*. (quoted citations omitted).[17]

Akron had no problem with addressing the merits in *Howe I* – but once that bite was taken by Akron, the issues on the merits were resolved. It now appears Akron is simply churning the appeal process by arguing and re-arguing liability issues (on which it has not appealed) over and over, as it attempted to do in the lower court. In essence, Akron acts as if *Howe I*–a reported decision--never happened. Such is not the case.

**f.    Piecemeal appeals are frowned upon by the Federal Courts, including the U.S. Supreme Court; moreover, the Appellant in appropriately presented a one-sided view in their portrayal of the facts, contrary controlling law.**

Akron should not be permitted a <u>second</u> do-over or additional piecemeal appeals, inviting this Court to reconsider liability in assessing the backpay and prospective relief granted by the district court. This standard was well explained in *Anderson v. Bessemer City*, 470 U.S. 564, 574-577 (1985) (emphasis added):

---

[17] It should be noted that this Court in *Howe I* agreed with the district court that a defendant's inaction cannot be "foisted" on the Plaintiff/Appellees. (*Howe I* at 662-663).

**The rationale for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make determinations of credibility.** The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources. In addition, the parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one; requiring them to persuade three more judges at the appellate level is requiring too much. **As the Court has stated in a different context, the trial on the merits should be "the 'main event' . . . rather than a "tryout on the road.'"** For these reasons, review of factual findings under the clearly-erroneous standard -- **with its deference to the trier of fact -- is the rule, not the exception**.

Undoubtedly, at issue was credibility of the experts and witnesses in this case, as the district court made abundantly clear in the decision-making process (as well as in post-trial conferences), as did the jury. Simply stated, Appellees' witnesses and experts were more credible, and those are issues for the factfinder.

Further, Akron is the moving party. As such it has a duty to portray the facts and issues reasonably, and they must be looked at in a light most favorable to the non-moving party. *See, e.g., Jordan v. City of Cleveland*, 464 F.3d 584, 588, n.2 (6th Cir. 2006) ("We are constrained to note that Cleveland's appellate briefing presented a totally different--and impermissibly one-sided--version of the facts. That does violence to the fundamental principle that on an appeal from an unfavorable verdict the appellant (like the reviewing court) must treat the record in

40

a manner most favorable to the appellee, with all reasonable inferences drawn in the same direction.").

Akron clearly left out the salient facts and evidence on which both the jury and district court relied and portrayed the lower case completely one-sidedly – and improperly.

    **g.**    ***Arguendo,*** **the EEOC 4/5ths Statistical Rule of Thumb is applicable and comports with the findings of the jury and district court.**

Akron, having basically avoided this argument in *Howe I*, (thus waiving it)*,* now claims that the 4/5ths Rule is inapplicable to small sample sizes.  First, Akron claims that it was prejudiced by the district court's including of mild deference to the EEOC Guidelines ("UGES") on promotional testing.  This is belied not only by Akron's reliance on the 4/5ths Rule in *Howe I,* but also in its alleged objections to jury instructions.  The day before the jury was to deliberate, Akron filed an "Objection to Adverse Impact Jury Instruction."  (RE#229).  The basis of the objection was that the Guidelines' 4/5ths Rule was not "mandatory" or "legally required."  (*Id.* at 2).  Akron argued that a jury should look at "the sum of statistical evidence…. It is one piece of evidence, nothing more." (*Id*).  The district court complied and formulated fitting jury instructions to that end. (RE#520).

While Akron now raises (as it failed to raise in *Howe I,* but, rather, embraced the 4/5ths Rule) that the 4/5ths Rule is not a "statistic" and not entitled to any deference, this is not so.

First, in its objection prior to the first trial (RE#229), Akron argued implicitly that the rule was entitled to some deference.  While noting that the UGES was written by experts in industrial psychology and adopted by the EEOC, Department of Justice, and other federal agencies, Akron argued it was a "non-judicial" issue and should only have "some deference" the same as any other expert.  The district court apparently took this into account and broadly explained to the jury that it could take any credibility expert issues as they saw fit.  They and the district court heard the testimony and assessed the credibility of what was presented during the lengthy trial.  Both court and jury agreed that the prima facie case had been established.

There was no order in the instructions that the jury was *required* to follow the 4/5ths Rule – on the contrary, the court carefully stated that the jury should consider small sample sizes and all of the evidence *in toto.*  Thus, the jury did, and found for the Appellees, as did the court.  Notably, not one of the jury questions to the court during deliberations dealt with statistical issues.  *See, also, Howe,* 789 F.Supp.2d at 797 ("This statistic is considered a 'rule of thumb.' 44 Fed. Reg. 11996, 11998.  It is not an absolute bright line test for adverse impact.  As such a

42

violation of the 4/5ths Rule does not require that the jury find that there was an adverse impact…Likewise, the defendant may rely on alternative statistical analyses to disprove an adverse impact." citing *Isabel v. City of Memphis,* 404 F.3d 404, 412 (6th Cir. 2005), referring to all manner of evidence and the 4/5ths Rule as a "statistic").

The application of the 4/5ths Rule was also cited by both parties in *Howe I* briefing, in which Appellees formally incorporate here (Case No. 11-3752, and associated documents, described *supra* in this Brief, including Appellees' first brief. All of the experts in the 2008 merit trial of the *Howe* case discussed the 4/5ths Rule and applied it in all their statistical analyses. Thus, it was instrumental to their conclusions -- and also to the jury's and court's conclusions.

Second, Akron now argues that the 4/5ths Rule is "criticized" and that the 4/5ths Rule is not accorded any deference. This is a new appellate argument, not raised previously with this Court and not preserved in any of Akron's pending appeals; thus, it is waived under applicable law. Further, Akron fails to cite one of the more important authorities that recently adopted the 4/5ths Rule, clearly according it *some* deference: *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677-2678 (2009) (relying on the 4/5ths Rule to conclude the Black applicants had established

a prima facie case of adverse impact).[18]  *See, also, Edelman v. Lynchburg College*,

535 U.S. 106, 117-118 (2002) (emphasis added and citations omitted):

> This presumption is complemented by the fact that Congress amended Title VII several times…without once casting doubt on the Commission's construction….During the debates over the Equal Employment Opportunity Act of 1972, amending the Civil Rights Act of 1964….**[b[y amending the law without repudiating the regulation, Congress "suggests its consent to the Commission's practice."**

*See, also, Smith v. Western Electric Co.,* 770 F.2d 520, 524 (5ᵗʰ Cir.1985),

citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 431 (1975) ("The UGES are

entitled to great deference.  The issue was the test battery that was validated under

the uniform guidelines for employment tests established by the [EEOC] (29 C.F.R.

§ 1607, et seq.").[19]

---

[18] The *Ricci* case dealt with a fire department roughly equivalent in terms of personnel as Akron's Fire Department.  In *Howe*, the jury and the district court considered the full evidence on the separate proof requisites imposed on the parties under Title VII subsec.(k) and the ADEA. All found that Appellees not only carried their burden of proof, but that Akron failed to carry its burden of proof of job-relatedness – an issue Akron has avoided in all of its appeals.

[19] *Edelman* dealt with timeliness of an EEOC charge.  In their concurrences , Justices O'Connor and Scalia argued that the Guidelines (UGES) were entitled to *Chevron* deference:

> Moreover, the regulation is codified [as are the 4/5ths Rule and N+1 or "N-of-1" test for small sample sizes] in the Code of Federal Regulations, 29 CFR§1601…and so is binding on all parties coming before the EEOC, as well as on the EEOC itself.…**"[T]he framework of deference set forth in *Chevron* does apply to an agency interpretation contained in a regulation.**  Because I believe the regulation is entitled to review under *Chevron,* and because the regulation is reasonable, I concur in the judgment.  (*Id.,* at 123,124, concurring opinions by Justices O'Connor and Scalia, emphasis added and quoted citation omitted).

44

In *Ricci* and *Edeleman,* the Supreme Court not only adopted the 4/5ths Rule but showed it some deference.  *See, also, Black v. City of Akron,* 831 F. 2d 131 (6th Cir. 1987) (relying on the 4/5ths Rule involving the Appellant and relied on by Appellant in its Appellant's brief in the instant case on a prior <u>pass-fail</u> examination.)  The *Howe I* decision noted the distinction between examinations that were "pass-fail" versus rank-ordered, as in this case, and ruled in favor of the Appellees on this legal issue.  (*Howe I* at 660).[20]

And while the *Ricci* decision dealt solely with passing rates, that was all it could do: the city in *Ricci* withdrew the examination results, thus depriving the city itself of proving that the tests were statistically job-related and consistent with business necessity *prior* to any disparate impact claim being alleged.  At the time, there were no eligibility lists promulgated or promotions that had taken place. (*Id.*).

The district court at trial in *Howe* properly accorded some deference to the EEOC and CFR codified regulations under §1607, et seq.: it stated that the federal regulations were entitled to *some* deference (not saying how much, which is

---

[20] *Black* was distinguished by this Court, based not on application of the 4/5ths Rule, but on pass rates-versus-promotional rates, finding in favor of Appellants. This was a legal and binding finding against Akron.  (*Howe I* at 660).  This is likewise true of Akron's misguided reliance on *Fudge v. City of Providence Fire Dept.,* 766 F2d 650 (1st Cir. 1985), which also involved a pass/fail hiring test, rather than rank-ordering and never discussed the UGES' "flip-flop Rule."

proper), and that small sample sizes and all of the statistics presented should be taken into account, as well as all statistical arguments presented at trial. It also properly stated that promotions were the metric, as legally affirmed by this Court in *Howe I*.

The jury and the district court in this case on the merits preferred the Appellees' proof and witness credibility, including the expert witnesses and application of the 4/5ths Rule statistic, taking into account all of the other statistics presented at trial, including small sample sizes. They also found that Akron had not carried its heavy burden of proving job-relatedness and business necessity – an appeal that Akron has now waived.

It is important to note that the 1991 Civil Rights Act codified disparate-impact language in Title VII, also has been found to apply to ADEA (See *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84 (2008)) and Appellees' state claims. It does not set forth any language as to small sample sizes or required statistics. In that sense, as observed by *Edelman,* the statute is ambiguous and the EEOC's codified regulations come into play and are thus entitled to some deference. This includes the EEOC regulations dealing with "small sample sizes," to which we now turn.

Under the UGES, Question 12 of the Question & Answers, adverse impact is determined by a four step process. (Appendix I).

46

This Court has already held that:

> The so-called "four-fifths rule" may be used to demonstrate the adverse-effect element of a disparate-impact claim, although the rule is not dispositive. The rule instructs that "a selection rate for any race, sex or ethnic group which is less than four-fifths… of the rate for the group with the highest rate" be "generally … regarded as evidence of adverse impact. 29 CFR § 1607.4(D). The City does not dispute [this].

*Howe I* at 659-660. Moreover,

> [W]here statistics are based on a relatively small number of occurrences, the presence or absence of statistical significance is not a reliable indicator of disparate impact." For smaller samples the value of the standard deviation rule drops off, see BALDUS & COLE, *supra*, § 9.1, and gives emphasis to Mark Twain's comment that there are "lies, damned lies and statistics."

*Waisome v. Port Auth. of N.Y. & N.J.*, 948 F.2d 1370, 1378-1380 (2d Cir.

N.Y. 1991), citing *International Bhd. of Teamsters*, 431 U.S. at 339-40 n.20;

*Mayor of Philadelphia v. Educational Equality League*, 415 U.S. 605, 620-21, 39

L. Ed. 2d 630, 94 S. Ct. 1323 (1974); 44 Fed. Reg. 11996, 11999 (March 2, 1979).

Indeed, the use of statistics beyond the 4/5ths Rule is not required at all,

except for extremely large populations. See, *EEOC Guidelines, Questions and*

*Answers,* Q&A No. 18, 22. (See Appendix I, attached).

**2.    Appellant notably avoided the all of the expert testimony at trial on the N-of-1 Rule (or "N+1 Rule") as applied to the EEOC 4/5ths Rule.**

Akron apparently returns to its argument (though it is not at all clear

in its scattered brief) that the numbers involved in these promotional tests for the

47

4/5ths Rule apparently is to be applied to test scores and not promotion rates.  This already has been decided in *Howe I.*

Moreover, Akron never raised the so-called EEOC's codified "flip flop Rule" in its first motion for directed verdict (Tr. 2111-2125) or in its second motion for directed verdict at the close of all the evidence.  (Tr. 2668-2728).  Nor was it raised in Akron's Rule 50(b) and 59 JNOV motion (RE#285).  Moreover, it was not the subject of any jury instruction or objection to any jury instruction proposed by either party.   Indeed, the "flip-flop Rule" was not discussed by anyone, other than trial testimony, except by the district court in its Order (RE#311, PageID#s 16420-16422), which cited liberally from the testimony heard at trial from Akron's own experts on the application of the "flip-flop Rule."  It was an issue of *fact.*[21]

---

[21] Indeed, the UGES specifically address the issue of small populations by use the "*N-of-1*" rule, or the "flip-flop" Rule.  (Johnson, T.Tr. 1008-1010; Q. 20 and Q.21).  The *N-of-1* rule test is designed to detect whether the numbers are "too small that it is likely that the difference [in selection rates] could have occurred by chance."  See UGES, 44 Fed. Reg. 11,996, 11,999,Questions and Answers, 21. (Appendix I). In short, the flip-flop Rule states that if 1 is subtracted from the group with the highest selection rate and 1 is added to the group with the lowest selection rate, if there is a reversal of adverse impact, then it is "more than likely that the difference could have occurred by chance."  UGES Questions and Answers, Q. 21. (Appendix I, attached).  If the juxtaposition of a single promotee would have caused the adverse impact to shift – or "flip-flop" – then any federal agency would have deemed enforcement action to be "inappropriate."  Question and Answers No. 21.  (Appendix I).  Since this does not happen with the results of the promotions at either rank in <u>this</u> case, the respective selection rates for each

As with its other waivers, Akron has waived any reliance at this late date, six years later, on the "flip-flop Rule" presented in evidence at the liability trial and affirmed by its own experts, as the district court noted in RE#311.[22] Indeed, the 2006 advisory committee notes to Rule 50(b) (directed verdict at trial) state (emphasis added):

> Because the Rule 50(b) motion is only a renewal of the pre-verdict motion, it can be granted **only on grounds advanced** in the pre-verdict motion. The earlier motion informs the opposing party of the challenge to the sufficiency of the evidence and affords a clear opportunity to provide additional evidence that may be available. The earlier motion also alerts the court to the opportunity to simplify the trial by resolving some issues, or even all issues, without submission to the jury. This fulfillment of the functional needs that underlie present Rule 50(b) also satisfies the Seventh Amendment.

*See, also, Ford v. County of Grand Traverse*, 535 F.3d 483, 491-494 (6th Cir. 2008) (same). Moreover, Akron cites nothing in the record on the flip-flop rule; it merely relies on the non-applicable and non-controlling case or *Fudge* 766 F.2d at 658. Yet, that case likewise mentions nothing about the "flip-flop Rule"

---

rank are more than sufficient for the Appellees to have carried their burden of proof.

Therefore, there is no issue relating to the numbers in the case being "too small," except to underscore the inappropriateness of Akron's attempted misuse of statistical significance due to the extremely low power of the statistics Akron attempted to use. (Brink, T.Tr. 1245-1249, 1304-1305; Johnson, T.Tr 1090). And Akron's belated attempt to argue the UGES "flip-flop rule" proven at trial, never before raised to the parties or any court, is <u>waived.</u>

[22] See the transcript excerpts by the Court in RE#311.

provided for small sample sizes in the UGES regulations or Questions and Answers.

All of this was *evidence*, utilized by experts, as quoted by the district court in RE#311.  It is undisputed that the jury was carefully instructed as to small sample sizes and also that no EEOC regulation was "legally" binding.  Both jury and court found for Appellees.  Akron cannot try to resurrect a non-issue relying on non-controlling case law (which does not address the N+1 Rule), which Akron long ago waived.  Moreover, Akron's lone gripe with the UGES "flip-flop rule" was limited to a single paragraph, perfunctory at best.  This does not suffice to raise an argument, particularly where the argument already has been waived.  Nor does it even cite from the trial record.  *See, e.g., McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) (quoted citation omitted):

> Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.

*See, also, Priddy v. Edelman*, 883 F.2d 439, 446 (6th Cir. 1989) ("We normally decline to consider issues not raised in [an] opening brief.").  Further, the *Priddy* Court properly recognized that, where a party declines to argue issues it deems dispositive in its motions before a court, it can be "reasonably interpreted [] as an abandonment [of such an argument]….").  *Id,* 883 F.3d at 446.

50

3.    **Akron Waives its Re-Arguments on "Heightened Scrutiny" for Caucasians in Disparate Impact cases, and this Court already has passed on Akron's argument for "Lost Chance" on Promotions and backpay.**

      a.    "Heightened scrutiny" was waived by Akron at trial and further does not apply, particularly in disparate impact cases of statistical disparities; to hold one race to a different level of proof is itself discriminatory.

As stated previously, waiver is imprinted on a majority of Akron's arguments in both the lower court and previously in this Court.  Akron argues that "waiver" is inapplicable to its second, belated run at "heightened scrutiny" and argues that Blacks are more protected.  This is inaccurate, as Akron never included this in the jury charge and never objected to its absence or in either of its Rule 50 motions at the close of Plaintiff's case or at the close of its own case; thus it was not preserved, as this Court properly found in *Howe I*.  Moreover, in *Howe I,* this Court likewise decided that "heightened scrutiny" did not apply to *disparate impact* claims.  In addition, Title VII (Subsec.k), controlling law, and the Fourteenth Amendment of the Constitution do not differentiate between race, color, sex or religion.  *See, e.g., Ricci, supra* (Whites are accorded the same rights as any other race, even in disparate *treatment* claims)*; Regents of Univ. of Cal. v. Bakke,* 438 U.S. 265, 289-290 (1978) ("The guarantee of equal protection cannot mean one thing when applied to one individual and something else when applied to a person of another color.  If both are not accorded the same protection, then it is

not equal."); *Rutherford v. City of Cleveland,* 179 Fed. Appx. 366, 373 (6th Cir. 2006) ("The level of scrutiny does not change merely because the challenged classification operates against a group that historically has not been subject to governmental discrimination.").

Thus, Akron's argument yet again fails.

**b.    Akron cannot revisit an issue that it never raised at trial and which was passed on in *Howe I,* namely, "Loss of Chance."**

Akron numerous times has tried to argue that Appellees' back pay must be deducted by an alleged "loss of chance" of promotion.  As held by the district court, however, Akron waived this issue by not bringing it into the original or damages trial themselves.

Ironically, one of the cases relied on by Akron is *JGR, Inc. v. Thomasville Furniture Indus.*, 550 F.3d 529, 532 (6th Cir. 2008), for Akron's proposition that "legal conclusions on damages are reviewed de novo."  (Appellant's Appellate Brief, Doc. 59 at 31).  However, in further proceedings, this Court held that **"**Relying on this Court's decision to preclude recovery for "lost profits" or "lost opportunity costs" due to JGR's failure to appeal the issue…We affirm."  *JGR, Inc. v. Thomasville Furniture Indus.*, 505 Fed. Appx. 430, 436 (6th Cir. 2012).

The "Lost Chance" argument proposed by Akron at this late stage is likewise lost.  It is akin to "lost opportunity costs."  Moreover, this Court already dealt with it in *Howe I* at 661-662) (emphasis added):

52

[A]ll Plaintiffs have demonstrated a reasonable likelihood of promotion.  Unlike monetary damages, promotions are binary; they cannot be discounted according to loss-of-chance methods…**Additionally, the City has provided no basis on which to distinguish between worthy and unworthy plaintiffs.**

**4.    The District Court's Order (RE#643) on Preliminary  Injunction and appointing a Court Monitor is limited in duration and narrowly tailored; moreover, Akron has flouted this order in outside negotiations with the Union, while professing to adhere to dealings with the Court Monitor (Appeal No. 14-3352).**

**a.    Akron has continually defied the district court's orders, despite the refusal to grant Akron's requests for stays on the orders.**

**i.    "Provisional Promotions"**

The damages retrial was originally ordered by the district court, not on liability but on damages only.  There is no record of any objection at that time made by Akron.  On July 13, 2011, days before the damages retrial (originally scheduled for July 18, 2011), Akron announced during a teleconference with the court and parties that it was in "dire need" of promotions because it now had too many vacancies.  Akron announced it was planning to instigate a new promotional process in the midst of litigation.   Shortly after, the district court ordered that the prevailing Appellees (who had not retired in the interim) be promoted to fill the vacancies.  (RE#416).  At that time, Akron filed an "emergency motion" in this Court and for stay (6th Cir. Appeal No.11-3752; RE# 419).  This Court ordered a temporary stay on the "emergency motion," and then ultimately denied the stay.

(RE#s438, 443).  This caused unnecessary briefing by Appellees in this Court and a week delay on the damages retrial.

In the interim, Appellees filed a motion to enforce the ordered promotions. (RE#431).  A telephonic conference with the district court and parties was held three days before the July 2011 damages retrial, in which Akron assured the Court that "provisional" promotions were identical to "full promotions."  Relying on this, the district ordered that "provisional terminology" was acceptable.  (RE#444). They are not identical for several reasons.  This again forced Appellees in the midst of attempting trial readiness to file another brief later that day, with exhibits. (RE#446).  The district court found Akron's assurances to be false and misleading, and sustained Appellees' objection, ordering that "full" promotions be made. (RE#454).[23]

### ii.    Akron's illusory attempt to sidestep make-whole relief in the form of prospective relief and exclude the Appellees from clandestine negotiations

The district court's order on prospective relief (RE#643), which was partially premised on this Court's decision in *Howe I,* stated (emphasis added):

Plaintiffs have urged here that the complete lack of job relatedness on the examinations at issue gives rise to a strong inference that the City knowingly

---

[23] The calculated announcement by Akron and resulting promotions order, days before the damages retrial, resulted in the loss of front pay calculations.  Moreover, shortly before trial the district court *sua sponte* ordered that it would change from a jury trial on damages to a bench trial.  The parties had filed numerous motions in limine and instructions during trial preparation, all of which were then mooted.

discriminated.  The Court, while recognizing such an argument, is also cognizant of the fact that [the Plaintiffs] are entitled to a make-whole remedy, having proven they were subjected to unlawful discrimination.  Accordingly, prospective relief is warranted...**At a minimum, Plaintiffs must be made a part of any new process to even approach a make whole remedy.**  The Court finds that absent injunctive relief Plaintiffs have **not** been made whole, Plaintiffs' motion for permanent injunctive relief, therefore, is GRANTED.

(*Id,* partial emphasis in original, citations omitted).

With respect to appointing the Court Monitor, the district court was hardly vague, but quite specific:

Rather, development of the new promotion procedure must be overseen by someone who can develop an understanding of the intricacies of the design process and use that understanding to resolve disputes intelligently and move **the parties** toward the outcomes the Title VII and Plaintiffs require.  Such oversight would improve this Court's confidence in the validity of the resulting selection procedure and help it make informed decisions about future remedial actions.

(RE#643, PageID#17335, emphasis added).  The district court found it necessary to appoint a Court Monitor in such complex proceedings, "particularly where a party has proved resistant or intransigent or special skills are needed." (*Id.*, citations omitted).  The district court also spelled out the duties of the Court Monitor (David Cohen, a known attorney in this line of work), and provided his resume, giving Akron and Appellees 10 days to object. (*Id.,*PageID#17336,17337). Neither party objected.  However, Akron at some point filed yet another appeal on this issue.  (Case No. 13-4268).

Contrary to Akron's complaints, the Injunctive Relief Order is not "unlimited" or overly broad: it was limited only to the "next cycle of promotions." (*Id.,* PageID#17332).  It is undisputed that Akron had already hired a testing consultant, Dr. Morris of Morris & McDaniel, in 2012, to design new promotional tests during litigation.  When Appellees protested, claiming they should have a say (RE#524, 525), Akron <u>voluntarily</u> and unilaterally halted the testing process without any order, essentially shelving it.  This action by Akron caused the firefighter's Union, Local 330, to file a grievance against Akron that stated Akron had waited too long to have promotional testing and was unfairly trying to pit the Union and the Appellees against each other, and underhandedly using the instant litigation as a catalyst.

Akron filed a motion to stay the proceedings with the Court Monitor, which was denied.

Thus, the parties (Akron and Appellees) have met with the Court Monitor six times and he has put in an enormous amount of work, as have both parties' lawyers and experts, Dr. Kyle Brink (Appellees' expert) and Dr. David Morris (Akron's expert) in designing a more valid testing procedure for the next cycle of

56

promotions soon to come up (the timetable currently calls for a testing process for all ranks (*i.e.,* a full cycle) in or around January, 2015).[24]

However, Akron has added a deliberate wrinkle. In order to sidestep the district court's order and pending Union grievance, despite the denial of a stay, Akron officials have been working clandestinely with the Union to create a "new" promotional process, which does not involve testing or assessment centers but relies only on "seniority points." Appellee/Plaintiffs have never been invited to these "negotiations," which are in direct contravention of the district court's order. At the same time as these secret negotiations were being done with the Union, Akron's attorneys and expert (Dr. Morris) were and have been purporting to work with the Court Monitor and the Appellees' expert (Dr. Brink) on valid "testing." This is a <u>true</u> "bait and switch" by Akron.

---

[24] "A cycle" of promotions include a small number of issues: When a promotional process is held, for example at the Captain's level, qualified Lieutenants apply for the process. When and if they are promoted, then vacancies occur at the Lieutenant's level. The same issues follow when any group of candidates is promoted. Because each rank (Firefighter, Lieutenant, Captain, District Chief) is affected by a promotional testing process, there are resultant vacancies at the lower level; a "cycle" is one line of testing for which qualified candidates can sit at each rank, filling the vacancies created. In this case, Akron managed to hold two promotional examinations for two ranks in one day (2004). A "cycle" consists of merely one round of promotions for each rank and nothing more. At that point the oversight of the court or any Court Monitor ends. All of this is already in place and in full swing. There is absolutely no "unlimited duration" of the district court's order. It is clearly finite, and indeed, currently pending, under the Court Monitor's urging and working with both parties' experts, Drs. Morris and Brink, attempting to bring a full cycle to fruition as soon as possible.

Appellees only recently learned of this in the midst of dealings with the Court Monitor and filed with the Monitor a recommendation of contempt (permitted by the district court's order, (RE#643, PageID#17734,¶12)), to which several responses and oppositions have been made. (RE#s729, 734, 735, and 737, with attendant exhibits).

Akron's primary arguments with respect to the Permanent Injunction and Court Monitor are twofold: 1) the injunction is "unnecessary" because Akron promises to be good in the future; and 2) the Court Monitor is unnecessary because Akron promises to be good in the future and enter "valid" promotional procedures. These "promises" as if made by a child, already have been broken. This is more evidence of Akron's contempt for any court order involving relief, including this Court's decision in *Howe I* and the district court's decisions with regard to injunctive relief, both promotional and prospective.

Can Akron be trusted to implement a valid testing/promotional procedure while at the same time negotiating with an outside entity (the Union) on an entirely different promotional procedure not involving Plaintiffs, for whom the injunction was intended? No.

For these reasons, neither Appellees nor any court can have confidence that Akron will produce a valid promotional process without the injunction – which is

limited to a single promotional cycle -- and without oversight by an appointed

Court Monitor in the complex and arduous case.

Finally, as this Court found in *Howe I,* 723 F.3d at 662:

> Plaintiffs here have much more invested in their careers than a probationary employee does. Most have over two decades of seniority. "Many" Plaintiffs were already acting in their new ranks at the time the district court ordered promotions. And even with the ordered promotions the district court pointed out that Plaintiffs "would still be at a significant disadvantage when compared to those that benefited from the prior [invalid] testing process." Among other things, the district court noted that, without promotions, Plaintiffs will be unable to gain experience and unable to seek the next rank during the following round of testing.

As spelled out in Akron's latest ruse of discussing testing with Appellee's

and Akron's experts, their attorneys, and the Court Monitor, Akron's simultaneous

negotiations with the Union on an entirely different process, not involving

Appellees or the Monitor, shows not only duplicity and contempt, but treachery.[25]

At some point, there has to be an end to Akron's incessant tactics to keep

trying to re-litigate the merits in this case. This case is not a sport. Nor is the

---

[25] Akron first negotiated a "settlement with the Union president that all promotions would be made solely based on years in service; it then attempted to alter the "agreement" to "time in grade." (RE#s729, 734, 735, and 737, with attendant exhibits). This is extremely prejudicial to Appellees, for whom the permanent injunction was meant to benefit. Because the district court (only days before the damages retrial) altered the timing of promotions at the expiration of the eligibility list in 2007, all Appellees lost two years' time in grade, thus, again prejudicing them, particularly with the side-deal Akron is apparently attempting to strike with the Union, excluding Appellees and this case. See RE#737, Ex.s 1, (Akron's latest attempt at a Memorandum of Agreement) and 2, (Declaration of Appellee Frank Poletta).

power of the Courts to be so abused, to the prejudice of Appellees who won both a jury trial and court factual determinations in 2008, and having to endure inadequate, piecemeal appeals, still ongoing, by Akron.

**B.    Law And Argument On Appellees' Cross-Appeal On Backpay**

**1.    The District Court Made *Two* Fundamental Errors in Computing Backpay**

Courts order equitable remedies under Title VII to make persons whole for injuries suffered on account of unlawful discrimination. *Gutzwiller v. Fenik*, 860 F.2d 1317, 1333 (6th Cir. 1988), citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975).[26]  Where discrimination is found, "the (district) court has not merely the power, but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future."  *Isabel v. City of Memphis*, 404 F.3d 404, 414 (6th Cir. 2005), citing *Louisiana v. United States*, 380 U.S. 145, 154 (1965).  The back pay award authorized by Title VII "is a manifestation of Congress' intent to make persons whole for injuries suffered through past discrimination."  *Loeffler v. Frank*, 486 U.S. 549, 558 (1988).

---

[26] *Albermarle* was also a disparate impact testing case.  ("And where a legal injury is of an economic character, the general rule is, that when a wrong has been done, and the law gives a remedy, the compensation shall be equal to the injury. The latter is the standard by which the former is to be measured. The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed.")(internal quotes and citations omitted).

As a general rule, when a court finds discrimination, it "must award backpay." *Thurman v. Yellow Freight Systems, Inc.* 90 F.3d 1160, 1168-69 (6th Cir. 1996); *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 626-8 (6th Cir. 1983) ("Backpay should be awarded even where the precise amount of the award cannot be determined…. Any ambiguity in what the claimant would have received but for discrimination should be resolved against the discriminating employer"); See, *Hance v. Norfolk S. Ry.*, 571 F.3d 511,520 (6th Cir. 2009). In the Title VII context, the plaintiff bears the burden of proving damages and is "entitled to the amount claimed unless the defendant can prove otherwise." *Hance v. Norfolk S. Ry.*, 571 F.3d 519-520, citing *EEOC v. Wilson Metal Casket Co.*, 24 F.3d 836, 841 (6th Cir. 1994) (internal citations and quotation marks omitted).

### a. The District Court utilized an incorrect start date for the commencement of back pay

The court issued an order stating that back pay will commence starting April 5, 2007 – or the date the eligibility lists expired. (RE#416, PageID#11106-7). The court's stated rationale was as follows:

> [A]n adverse impact cannot be determined until the 'total selection process' has been completed (Doc. 277, page 10 citing 29 C.F.R. § 1607.4(C)). The promotional process was not completed until the expiration of the list generated by the test. During the pendency of the list, any of the Plaintiffs could have been promoted. Therefore, no injury capable of legal redress existed until the eligibility list expired on April 4, 2007. This Court finds that back pay shall commence on April 5, 2007, the date that the promotion list expired.

(*Id* at PageID#11107).

While it is true that the adverse impact due to promotion rates could not be determined until all the promotions had been made from the eligibility lists, this is not the same as determining when to commence back pay. Backpay damages are computed from the <u>date of the injury</u> (*i.e.,* the first discriminatory promotion in 2005) through the date of final judgment. *EEOC v. Monarch Machine Tool Co.*, 737 F.2d 1444, 1451-53 (6th Cir. 1980)(Where an employer has discriminatorily refused to hire an employee, contrary to that employee's rights under Title VII, the award of back pay will be computed from the date of first refusal until final judgment). See also, *United States v. City of Warren*, 138 F.3d 1083, 1095 (6th Cir. 1998)("[T]he back pay period should begin whenever the United States provides the employer with notice and information comparable to that normally contained in a charge of discrimination filed with the EEOC."); *Lewis v. City of Chicago*, 560 U.S. 205 (2010)(claim for disparate impact arises each time city uses the test to make hiring decisions); and, *Suggs v. Servicemaster Educ. Management Corp.*, 72 F.3d 1228, 1233 (6th Cir. 1996), citing, *Terbovitz v. Fiscal Court of Adair Cty.*, 825 F.2d 111 (6th Cir. 1987) and *Gutzwiller v. Fenik*, 860 F.2d at 1333.

The date of commencement of back pay in cases involving discrimination where promotional lists are in play is the date that the first denial of promotion under the process occurred. See, *Johnson v. City of Memphis*, 2006 U.S. LEXIS

62

97566 at *59 (W.D. Tenn. 2006)("The Court further orders that the City…pay to those plaintiffs thus promoted backpay commensurate with their having assumed the sergeant rank on the date of their **first denial of promotion** under either the 2000 or 2002 process.")(Emphasis added).

Ironically, the district court stated that its Order changing the promotional time to 2007 and 2005: "I understand how I promoted them.  I promoted them in the first step underpurposefully." (RE#565, PageID#15905, emphasis added, relating to the court's Order changing the date for back pay from 2005 to 2007).  Is this yet another unwarranted sanction?

### b. By ordering the promotion of the Appellees at Step 4, and also by applying the step increases to the backpay awarded to the Appellees, the District Court forced step progression upon Appellees twice

The court, in its back pay awards, failed to make Appellees whole.  When the Appellees were promoted by Akron in July 2011 pursuant to the District Court's injunctive relief order on promotions (RE#416), they were not promoted to the "Step 6" top pay level.  Regardless of whether the proper backpay commencement date was in 2005 or 2007, the promoted Plaintiffs would have achieved the top pay level (Step 6) no later than 2009 – well before their actual remedial promotions in 2011.

Based upon this disparity, in order to make the Appellees whole, the Appellees asked the court to award them a *differential* between Steps 4 and 6.

(RE#572-1, Proposed FFCL Relating to Damages, as Corrected, PageID#16059-63.).

Besides promoting the Appellees at the entry-level step increase, the court also included the step increase in the computation of backpay for each Appellee. This resulted in the Appellees being subject to the incremental step increases twice -- once when promoted 2011 and once in the determination of back pay from April 2007.  No other promoted firefighter has suffered this kind of penalty, and by forcing the Appellees to endure the double imposition of the incremental step increase, the court did not make them whole.[27]

## 2.  The District Court improperly excluded Appellees computation of backpay damages from April 2007 (Exhibit 208).

"[T]he computation of damages in this case does not appear to require anything more sophisticated than the underlying payroll data, a grasp of arithmetic, and an Excel spreadsheet. The relative ease with which damages can be calculated

---

[27] Indeed, the district court seemed to double-back on its 7/13/2011 Order when this year issued its Order on Prospective Relief (RE#643, PageID#17331, emphasis added), in which the court postulated certain questions, including," **The harm that remains is an equitable one.  There are many questions that must be answered: e.g., Are there any plaintiffs that deserve additional time in grade?....Should there be some type of carve out for the next round of testing to put the victims of the discrimination on <u>equal footing</u> as those promoted earlier off of the discriminatory test?"**

Clearly, if the Plaintiffs/Appellees were to be made whole, the start date of backpay and step increases should have been when the first promotions were made in April 2005. See *Lewis, supra,* (each <u>use</u> of a discriminatory process is itself discriminatory and sets a standard for determining liability and damages).

is best evidenced by the fact that two non-experts, Snyder and Carr, devised the competing methods for calculating them." *Howe II* (Gilman, J., concurring) (RE#609, PageID#16631-39).

In performing their calculations, Snyder and Carr simply entered the payroll data obtained from Akron into their Excel spreadsheets. (RE#370-2, Exhibit 2, Snyder depo., PageID #8930; RE#455-1, Carr depo., Page ID#11614, 11629).

Lay and expert testimony are distinguishable in that "lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" *See,* Fed. R. Evid. 701 Advisory Committee's Notes (2000). "This does not mean that an expert is always necessary whenever the testimony is of a specialized or technical nature. When a lay witness has particularized knowledge by virtue of her experience, she may testify -- even if the subject matter is specialized or technical -- because the testimony is based upon the layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702." *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009). Even Judge Gilman agreed that neither Carr nor Snyder were "experts." *Howe II* concurrence, *supra.*

Neither Snyder nor Carr was offered as an "expert," nor were they required to be viewed by the court as such. Their calculations were based upon simple

65

math, relying on the wage information provided by Akron. No "specialized knowledge" was needed. As Carr explained, "it's all addition, multiplication, and subtraction. Just because it's voluminous doesn't make it hard." (RE#455-1, Carr depo., PageID#11567). Thus, the calculations were within the common knowledge of a lay person, and expert testimony was not required. See, *Neponset Landing Corp. v. Northwestern Mut. Life Ins. Co.,* Case No. 10-11963-JGD, 2012 U.S. Dist. LEXIS 151456 at 13 (D. Mass. Oct. 22, 2012)(holding that witness "used simple arithmetic" and "relied on straightforward calculations and comparisons to support her opinion, which did not require skills of an expert witness."); *Corporate Exchange Bldgs. IV & V, L.P. v. Franklin Cty. Bd. of Revision*, 82 Ohio St.3d 297, 303 (1998) (J. Stratton, dissenting) ("[n]o expert testimony was necessary to explain or substantiate what amounted to a simple mathematical calculation.")

As noted above, as a result of the court's Orders on the eve of retrial, the scope of damages continued to change prior to trial. (RE#404, Conference Tr., PageID#10946-49; RE#416, Order, PageID#11104-07). The change in the commencement date for back pay required that the calculations for back pay damages start on 4/5/2007, not 5/16/2005 which was the date used by Appellees – which in turn meant that Appellees' counsel needed to re-evaluate the damage calculations because the average salaries of promoted officers in 2005 used by.

Snyder could not be used with a back pay date now beginning in April 2007 – a fact acknowledged by the court.  (RE#448, Order, PageID#11484).

The damages amount inevitably needed to change to comply with the July 13, 2011 Order.  Appellees' trial exhibits included both Snyder's and Carr's calculations (PX 208) because Appellees intended to seek reconsideration from the 7/13/2011 Order.[28]  (RE#415, Exhibit List, PageID#11101-03; RE#429, Amended Exhibit List, PageID#11282-85; RE#441, Motion for Reconsideration, PageID#11399-405). In addition to seeking reconsideration, Appellees' counsel also complied with the 7/13/2011 Order regarding the back pay date by creating Exhibit 208.  Carr started working on PX 208 after the court belatedly announced that the commencement date for back pay was 4/5/2007, approximately one month after the close of discovery for the retrial.  (RE#455-1, Carr depo., PageID#11615). Each Appellee also reviewed PX 208 and checked the calculations.  *Id.* at ID#11614, 11637-39.

Moreover, the basic formula never changed – it always involved the Appellees' weekly payroll data provided by Akron multiplied by the incremental

---

[28] Appellees actually prepared and provided 4 exhibits relating to backpay damages: from 2005 with and without differential and from 2007 with and without differential because it was not known how the court would ultimately rule. Appellees' request for reconsideration was denied on 7/25/2011, and Exhibit 208 became the operative damage computations. (RE#449, Order, Page ID#11486.)

step increases. The method for calculating damages did not change. (RE#469, Trial Tr., PageID#12858).

Appellees and their counsel had nothing to gain from this so-called "bait and switch" scheme.  It is not logical that Appellees counsel would have to spend weeks of their own time (and their clients' time) scheduling, preparing and participating in 23 Appellees depositions under the guise that they intended to deceive Akron by abandoning Mr. Snyder's calculations and instead purposefully switching to Carr's calculations on the eve of trial, all for the purpose of *reducing* their overall damages by an aggregate $120,000.[29]  Also, it cannot be overlooked that Akron suffered no prejudice.  This is confirmed by the fact that Akron chose not to present any damage calculations at the retrial. (RE#565, Trial Tr., PageID#15881).

Furthermore, any prejudice claimed by Akron could have been cured by a proper trial examination of Carr on his damage calculations.  Instead of properly re-deposing Carr about his method of calculations, Akron chose to spend a significant portion of the deposition focusing on issues unrelated to damages with the intent of insinuating misconduct by Appellees' counsel. (RE#455-1, Carr

---

[29] Carr tested the difference between the use of the gross-up and comparative methodologies using the April 5, 2007 commencement date.  Using the comparative method resulted in an increase of $120,000 in just the Captain Appellee back pay damages overall as the sole comparator for April 2007 was one individual – the highest paid Captain promoted.

depo., PageID#11608-09, 11653-55; RE#468, 07/26/11 Trial Tr., PageID#12543-44; RE#530, Order, PageID#15367).  Even during the re-trial, Akron constantly attempted to re-litigate issues unrelated to damages:

> Akron's counsel's conduct during Mr. Carr's in-court deposition is indicative of the way Akron conducted each of its discovery depositions.  The Court limited the depositions in both time and scope, yet a reading of the discovery deposition transcripts shows that Akron's counsel continuously delved into matters completely unrelated to the retrial on damages.  Even much of Akron's time during the retrial was used to re-litigate the liability issue – which was not an issue on retrial.

> (RE#530, Order, PageID#15367).

Additionally, despite a Court Order, Akron refused to produce its calculations during discovery. (RE#358, Conference Tr., PageID#8323).  No prejudice can exist given Akron's failure to focus on the damage issues and deliberately refusing to timely produce its own calculations.[30]

---

[30] As noted in the Statement of the Case, courts sitting on a bench trial have routinely calculated equitable backpay and interest damages; Appellants had already provided to the court a roadmap for these calculations in 2009, in their Rule 59(e) motion. (RE#280).  When the district court, shortly before retrial, converted the trial into a bench trial on strictly equitable remedies, it remains obscure why it required all Appellees to testify on routine calculations it had been given years before – and then to blame Appellees for this in the form of monetary and exclusionary sanctions.

**3.    The District Court erred in failing to award pre-judgment interest**

In this Circuit, the award of prejudgment interest is within the discretion of the trial court.  *E.E.O.C. v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 579 (6th Cir. 1984).  An abuse of discretion will be found where the district court plainly erred.  *In re Bendectin Litigation*, 857 F.2d 290, 307 (6th Cir. 1988), *cert. denied*, 488 U.S. 1006 (1989).

Prejudgment interest is usually appropriate to make a discrimination plaintiff whole.  *Thurman v. Yellow Freight Sys.*, 90 F.3d 1160, 1170 (6th Cir. 1996), citing *E.E.O.C. v. Wilson Metal Casket Co.*, 24 F.3d 836, 841-42 (6th Cir. 1994)("An award of prejudgment interest…is an element of complete compensation in a Title VII back pay award.  Prejudgment interest helps to make victims of discrimination whole and compensates them for the true cost of money damages they incurred.  This court commonly awards prejudgment interest on back pay awards.")(internal quotations omitted).  Discrimination victims should not be penalized for delays in the judicial process, and discriminating employers should not benefit from such delays.  *Id.* at 842; see also, *Loeffler v. Frank*, 486 U.S. 549, 557-558 (1988) ("award of prejudgment interest…is an element of complete compensation in a Title VII case"); *West Virginia v. United States*, 479 U.S. 305, 311 (1987) (Prejudgment interest serves to thereby achieve "full compensation for the injury those damages are intended to redress"); and, *Tiemeyer v. Community Mutual Ins.*

70

*Co.*, 8 F.3d 1094, 1102 (6th Cir. 1993)("Awards of prejudgment interest are compensatory, not punitive, and a finding of wrongdoing by the defendant is not a prerequisite to such an award.").

Any award of prejudgment interest should be calculated from the time of accrual of the date of the wrong committed.  In this case, it would be the Lieutenant and Captain examinations themselves, as both were shown to be discriminatory.  *Reed v. Mineta*, 438 F.3d 1063, 1066 (10th Cir. 2006)("As a general rule, district courts 'should calculate interest on back pay and past damages based on the date of the adverse employment action.'"), citing *Thomas v. Tex. Dep't of Crim. Justice*, 297 F.3d 361, 372-373 (5th Cir. 2002) and *E.E.O.C. v. Wilson Metal Casket Co.*, 24 F.3d 836, 842 (6th Cir. 1994).  This Court should order pre-judgment interest to make Appellees whole.

## 4.    Errors in <u>specific</u> Appellees' backpay calculations

By setting the back pay start date in 2007 as opposed to 2005, the district court precluded all Appellees from several years of recoverable damages, and precluded several Appellees from any relief whatsoever.

The court's holding precluded Appellee Snyder from receiving any back pay.  Appellee Snyder suffered an injury in February 2007, leading to his disability retirement in 2009.  (RE#468, Tr. 135).  According to the court, "[b]ecause he could not perform the function of the Captain's job as of February 2007, prior to

71

the commencement date of back pay calculations, he is not entitled to any damages." (RE#588, PageID#16489).  The use of the proper earlier back pay start date in 2005 would have afforded Appellee Snyder back pay until February 2007, totaling $26,067.96. (RE#468, Tr. 96-98).

Appellee Harvey retired in September 2005 after promotions were being made off of the invalid eligibility list. (RE#489, PageID #13522).  The court's holding effectively offered him no relief – no promotion and no award of back pay. (RE#588, PageID#16490).

Appellee Schueller was promoted to the rank of Lieutenant on November 15, 2006, just before the April 2005 eligibility list expired. (RE#490, PageID#13552).  Had Schueller been promoted on May 16, 2005, he would have already been at Step 2 of the incremental increases for the rank of Lieutenant on the date he was actually promoted. (*Id.*).  The delay in promotion caused Schueller to suffer economic damages in the amount of $2,777.88, which is the amount of back pay losses due to the loss of incremental pay increases from May 16, 2005, through May 15, 2007, the date he would have reached full step.  (*Id.*).  The District Court's decision fails to even mention Appellee Schueller.  (RE#588, PageID#16479-90).

**C**.    **Law And Argument On The District Court's Sanctions Order**

1. **The District Court Erred By Imposing Sanctions And Awarding Attorney Fees And Costs Totaling $97,056.18 Against The Prevailing Party.**

   a.     **The standard of review.**

   An appellate court reviews the imposition of sanctions under 28 U.S.C. § 1927 for an abuse of discretion. *Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 634 (6th Cir. 2009); *Red Carpet Studios, Div. of Source Advantage, Ltd. v. Slater*, 465 F.3d 642, 644 (6th Cir. 2006).

   b.   **The concurring opinion of Judge Gilman offers unyielding support for reversing the monetary sanctions Order.**

   While Judge Gilman fully concurred with the lead opinion that the Court lacked interlocutory jurisdiction over the first sanctions appeal, he wrote a concurring opinion to address the merits of the appeal. Best expressed in his own words, the sanctions award was "an unjustified overreaction by the district court":

   > ***I write separately to express my doubts regarding the propriety of the sanctions order imposed by the district court. As an initial matter, the Sixth Circuit has repeatedly cautioned against imposing sanctions on attorneys pursuant to 28 U.S.C.§1927 should be limited to instances involving serious misrepresentations or vexatious litigation tactics, neither of which appear to be present here. *See, e.g.,* Ga*rner v. Cuyahoga Cnty. Juvenile Ct.,* 554 F.3d 624, 635 (6th Cir. 2009) ("[A]warding attorney fees against a nonprevailing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct.") (internal quotation marks omitted). Similarly, imposing sanctions on attorneys pursuant to 28 U.S.C.§ 1927 should be limited to instances involving serious misrepresentations or vexatious litigation tactics, neither of which appear to be present here. *See Jones v.*

*Cont'l Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986) (discussing §
1927 sanctions).

The sanctions strike me as particularly inappropriate because of
the severe time constraints imposed on the plaintiffs by the
district court's timing of its own orders. Although the discovery
cutoff date was June 17, 2011, the court did not issue its order
regarding the commencement date for backpay until July 13,
2011, almost a month after the close of discovery and less than
two weeks before the damages phase of the trial began. This
order, which set April 5, 2007 as the start date for the award of
backpay instead of the year 2005, required the plaintiffs to
revisit their calculation of damages. The Carr method, unlike
the Snyder method, contained the correct start date for backpay
and used a gross-up methodology to more accurately calculate
the backpay due the firefighters. Given these time constraints,
the conduct of the firefighters' counsel looks less egregious.

The last-minute determination of the start date also makes the
district court's characterization of the actions by the firefighters'
counsel as a 'bait and switch' tactic appear overwrought…..But
the computation of damages in this case does not appear to
require anything more sophisticated than the underlying payroll
data, a grasp of arithmetic, and an Excel spreadsheet. The
relative ease with which damages can be calculated is best
evidenced by the fact that two non-experts, Snyder and Carr,
devised the competing methods for calculating them.

Finally, the amount of the sanctions award seems to bear little
relationship to the harm, if any, caused by the switch. Instead of
reimbursing the City only for the costs incurred in redeposing
the plaintiffs in June 2011, the district court totaled all of the
City's fees and costs from January 2011 until July 2011 and
then reduced the total by half. This lack of precision in isolating
the harm allegedly caused by the conduct of the firefighters'
counsel does not pass muster under 28 U.S.C. § 1927. *See
Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir.
1997) (noting that the "sanction must bear a financial nexus to
the excess proceedings"). For all of these reasons, the sanctions

award strikes me as an unjustified overreaction by the district court.

(RE#609, Sixth Circuit Concurring Opinion, PageID#16637-16639.)

This case took on a life of its own. While the supplemental discovery and damages re-trial may not have proceeded as smoothly as expected by the District Court, this does not justify the imposition of sanctions. Moreover, the district court had a mighty hand in delaying and confusing this case, as did the Appellant.

### c.    Judge Adams has now vacated the sanctions Order.

The district court recognized the import of Judge Gilman's concurring opinion. (RE#722, 09/30/14 Order, PageID#18050-18054.) "Judge Gilman expressly warned that the sanctions award was improper.***[I]t views Judge Gilman's concurring opinion as a strong indicator of the result of an appeal should this Court maintain its sanction." *Id.* at PageID#18050, 18052. The District Court further remarked "that a fellow judge could view the record so differently and reach such a dramatically different result certainly gives this Court pause to reconsider its decision." *Id.* at Page ID#18053.

Upon reflection, Judge Adams granted Plaintiffs' counsel's motion for reconsideration and vacated the sanctions order on September 30, 2014. (R. 722, 09/30/14 Order, Page ID# 18050-18054.)[31]  Given this development, on October 2,

---

[31]  The September 30, 2014 Order explicitly announces that "the Sanctions Order issued September 24, 2012 is hereby vacated." (R. 722, 09/30/14 Order,

2014, Plaintiffs' counsel filed a motion to determine jurisdiction requesting this

Court to determine how the parties should proceed with the sanctions appeal,

providing two options: dismiss the sanctions appeal, or alternatively, remand the

case to the district court for purposes of re-issuing its September 30, 2014 Order.

Akron did not object having the case remanded for purposes of having the district

court re-enter its September 30, 2014 Order.  Since the motion remains pending,

and to avoid any potential jurisdictional shortcomings, Appellees' counsel request

the Court to either reverse the Order or 9/12/2012, or alternatively, remand the case

with instructions to the district court to re-enter its Order on 9/30/2014.

## VI.    CONCLUSION AND RELIEF SOUGHT

This case involves a complex web of issues, as well as difficult

litigation and numerous piecemeal appeals by Appellant Akron, most of which

have been consolidated.  **1)** With respect to Appellant Akron's attempt to return

once again to liability issues, long-since passed on, Appellees argue this issue has

been completely waived, and ask this Court to find same.  Appellees have offered

*arguendo* arguments as a cautionary measure, nonetheless, which continue to show

---

Page ID# 18054.)  But there is concern over how the District Court's Order
vacating the sanctions Order impacts the Court's prior decision to exclude
Plaintiffs' Exhibit 208 containing the damages calculations along with the
testimony of two Plaintiffs (Captain Bradley Carr and George Snyder), which
served as a basis for sanctions during the damages retrial. This is addressed in the
back-pay appeal.

they prevailed on their 2008 and 2009 verdicts/decisions.  **2)**  Appellees have

shown that, due to the district court's several changes of mind, and namely on the

eve of the damages trial in July 2011, their calculations had to change by two

years, but the basic, simple mathematical formula remained the same.  **3).** Akron

has pulled a true "bait and switch" by negotiating future promotional processes

with a non-party and simultaneously purporting to work on "testing" with the

appointed Court Monitor and both parties' experts.  **4)** Appellees and their counsel

have been laden by Appellant, not by timely arguments on the issues, but by

incessant, piecemeal appeals and alleged "misconduct," in which the district court

first *sua sponte* imposed sanctions against Appellees' counsel in the form of

$200,000 three years ago, later shaved down to roughly $97,000, then later

reversed it altogether a couple of months ago, while these issues were pending on

appeal.  That has had a devastating effect and has cast a pall over Appellees'

counsel (all of whom comprise two small firms) for over three years.  This has

affected their practices and their other cases, as well as their reputations, and has

unnecessarily added an incredible amount of time and effort to their workload in

this case, impeding other, more productive work.

With regard to the sanctions: the district court has not rescinded the Carr

testimony on damages, after it changed the date of promotions on the eve of trial,

but has rescinded the monetary sanctions against Appellees' counsel.  Appellees

request this also be addressed; the Appellees are still in doubt as to where

jurisdiction lies:  is it with this Court or with the district court's reconsideration

and rescinding of the monetary sanctions?  We simply do not know, and the record

has been hopelessly confused by Appellant Akron and the district court.

**6) Relief sought; Appellees seek to: a)** have this Court DISMISS Appellant

Akron's appeals, grant Appellees' cross-appeal on backpay, giving them the full

step increases and backpay award to May 2005, and also grant the questionable

(jurisdiction-wise) appeal on sanctions against the prevailing Appellees and

counsel; **b)** assign this case to the original panel in *Howe I*, which is familiar with

the complex facts and issues; and **c)** if the case is remanded, that it be reassigned to

a different judge.  There are two primary justifications for this: first, the current

district court has shown a penchant for punishing Appellees' counsel in previous

cases, which have been reversed in published opinions, and one of which was

reassigned: *Jordan v. City of Cleveland* 464 F.3d 584 (6th Cir. 2006) (in which

Judge Adams wrongfully excluded economic damages, reversed by this Court,

finding the exclusion by the court itself was wrongful, and implementing full

attorney fees, finding the undersigned had done "exemplary" work; and *Rorrer v.

City of Stow,* 743 F.3d 1025 (6th Cir. 2014), in which this Court found that Judge

Adams was incapable of impartiality towards counsel and the plaintiff, thus

ordering reassignment to a different judge.

In this case, Judge Adams not only exacerbated the litigation, sometimes waiting over a year in ruling on pending substantive motions, but also belittled Appellees and their counsel, and warned that, while it was grudgingly rescinding its monetary sanctions, it would take it out of Appellees' counsel's attorney fees. (Notably, the court cannot take anything out of Appellant Akron's fees, since it has been paid to their attorneys all along, regardless of consequences.)

The undersigned counsel truly believe that this judge cannot be impartial towards them, as borne out by the record of this case and other cases cited.  As such, they request that, should this Court find in their favor and remand, the case be assigned to another judge.  The lone remaining issues to be determined are Appellees' counsel's attorney fees.  In all honesty, given the district court's warning that it would punish them anyway on fees, Appellees suggest it would be prudent to reassign this case, should it be remanded.

Respectfully submitted,

*/s/ Christy B. Bishop*
Dennis R. Thompson (0030098)
Christy B. Bishop (0076100)
THOMPSON & BISHOP LAW OFFICES
946 Kenmore Blvd.
Akron, OH   44314
Tel: (330) 753-6874
Fax: (330) 753 7082
Email: law@thompsonbishop.com
        bishopchristy@gmail.com

Bruce B. Elfvin (0015964)
Barbara Kaye Besser (0017624)
Stuart Torch (0079667)
ELFVIN & BESSER
4070 Mayfield Rd.
Cleveland, OH  44121
Tel: (216) 382-2500
Fax: (216) 381-0250
Email: bbe@elfvinbesser.com
        bkb@elfvinbesser.com
        stuart.torch@elfvinbesser.com

*Counsel for Plaintiffs-Appellees/Cross-Appellants*

Monica A. Sansalone (0065143)
Holly M. Olarczuk-Smith (0073257)
GALLAGHER SHARP
Bulkley Building, Sixth Floor
1501 Euclid Avenue
Cleveland, OH   44115-2108
Tel: (216) 241-5310
Fax: (216) 241-1608
Email:
msansalone@gallaghersharp.com
holarczuk-smith@gallaghersharp.com

*Counsel for Cross-Appellants Dennis R. Thompson and Christy B. Bishop and the Thompson & Bishop Law Offices*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that 11/26/2014 a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

 */s/ Christy B. Bishop*
Dennis R. Thompson (0030098)
Christy B. Bishop (0076100)
THOMPSON & BISHOP LAW OFFICES
946 Kenmore Blvd.
Akron, OH   44314
Tel: (330) 753-6874
Fax: (330) 753 7082
Email: law@thompsonbishop.com
        bishopchristy@gmail.com

**CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)**

I hereby certify that this brief conforms the appellate on typeface being 14-point New York Times and consists of 19,774 words, and that Appelees have been given permission by this Court to file an oversized brief due to the extraordinary circumstances of this combined set of appeals.

/s/ Christy B. Bishop
Christy B. Bishop

# APPENDIX I

## Uniform Guideline of Employee Selection
## Question and Answers

## Question 12

1) calculate the rate of selection for each group (divide the number of persons selected from a group by the number of applicants from that group).
(2) observe which group has the highest selection rate.
(3) calculate the impact ratios, by comparing the selection rate for each group with that of the highest group (divide the selection rate for a group by the selection rate for the highest group).
(4) observe whether the selection rate for any group is substantially less (i.e., usually less than 4/5ths or 80%) than the selection rate for the highest group. If it is adverse impact is indicated in most circumstances. See Section 4D.

For example:

| Applicants | Hired | Selection Rate Percent Hired |
|------------|-------|------------------------------|
| 80 White   | 48    | 48/80 or 60%                 |
| 40 Black   | 12    | 12/40 or 30%                 |

A comparison of the black selection rate (30%) with the white selection rate (60%) shows that the black rate is 30/60, or one-half (or 50%) of the white rate. Since the one-half (50%) is less than 4/5ths (80%) adverse impact is usually indicated.

**There is no requirement that a plaintiff must provide perform any statistical tests other than that required by the Uniform Guidelines on Employee Selection ("UGES") (4/5ths Rule), particularly in cases where the population involved is relatively small.**

(emphasis added)

# APPENDIX I

## Uniform Guideline of Employee Selection
## Question and Answers (Cont'd)

## Question 18

Q:    Is it usually necessary to calculate the statistical significance of differences in selection rates when investigating the existence of adverse impact?

A:    No. Adverse impact is normally indicated when one selection rate is less than 80% of the other. The federal enforcement agencies normally will use only the 80% *(4/5ths)* rule of thumb, except where large numbers of selections are made. See Questions 20 and 22.

## Question 21

Q. Is evidence of adverse impact sufficient to warrant a validity study or an enforcement action where the numbers involved are so small that it is more likely than not that the difference could have occurred by chance?

For example:

| Applicants | Not Hired | Hired | Selection Rate/Percent Hired |
|------------|-----------|-------|------------------------------|
| 80 White   | 64        | 16    | 20                           |
| 20 Black   | 17        | 3     | 15                           |

White Selection Rate ........................................ 20

Black Selection Rate ........................................ 15

15 divided by 20 = 75% (which is less than 80%).

A. No. If the numbers of persons and the difference in selection rates are so small that it is likely that the difference could have occurred by chance, the Federal agencies will not assume the existence of adverse impact, in the absence of other evidence. In this example, the difference in selection rates

# APPENDIX I

## Uniform Guideline of Employee Selection
## Question and Answers (Cont'd)

## Question 21 (Cont'd)

is too small, given the small number of black applicants, to constitute adverse impact in the absence of other information (see Section 4D). If only one more black had been hired instead of a white the selection rate for blacks (20%) would be higher than that for whites (18.7%). Generally, it is inappropriate to require validity evidence or to take enforcement action where the number of persons and the difference in selection rates are so small that the selection of one different person for one job would shift the result from adverse impact against one group to a situation in which that group has a higher selection rate than the other group.

On the other hand, if a lower selection rate continued over a period of time, so as to constitute a pattern, then the lower selection rate would constitute adverse impact, warranting the need for validity evidence.

## Question 22

Q:    Is it ever necessary to calculate the statistical significance of differences in selection rates to determine whether adverse impact exists?

A:    Yes. Where large numbers of selections are made, relatively small differences in selection rates may nevertheless constitute adverse impact if they are both **statistically and practically significant**. See Section 4D and Question 20. For that reason, if there is a small difference in selection rates (one rate is more than 80% of the other), but large numbers of selections are involved, it would be appropriate to calculate the statistical significance of the difference in selection rates.

## DESIGNATION OF RELEVANT DOCUMENTS

| Date | Record Number | Page ID Number | Document Description |
|---|---|---|---|
| 11/16/06 | 1 | 1-13 | Complaint |
| 10/19/07 | 23 | 136-153 | First Amended Complaint |
| 8/14/08 | 80 | 504-546 | Defendant's Motion for Summary Judgment |
| 10/3/08 | 99 | 2507-2562 | Plaintiff's Opposition to Defendant's Motion for Summary Judgment |
| 10/20/08 | 122 | 3712-3749 | Defendant's reply to Plaintiff's Opposition to Summary Judgmet |
| 10/29/08 | 132 | 3897-3898 | Notice of Appearance on behalf of Plaintiffs |
| 11/17/08 | 138 | 3938-3970 | Joint Proposed Jury Instructions |
| 11/19/08 | 145 | 4017 | Order of Dismissal |
| 11/29/08 | 172 | 4177-4181 | Plaintiff's Trial Brief |
| 12/8/08 | 194 | 4419-4569 | Trial Transcript- Volume 1 |
| 12/8/08 | 195 | 4570-4798 | Trial Transcript- Volume 2 |
| 12/8/08 | 196 | 4799-5088 | Trial Transcript- Volume 3 |
| 12/11/08 | 202 | 5089-5379 | Trial Transcript- Volume 4 |
| 12/11/08 | 203 | 5380-5500 | Trial Transcript- Volume 5 |
| 12/11/08 | 204 | 5501-5690 | Trial Transcript- Volume 6 |
| 12/15/08 | 211 | 5776-6037 | Trial Transcript- Volume 8 |
| 12/15/08 | 212 | 6038-6324 | Trial Transcript- Volume 9 |
| 12/15/08 | 213 | 6325-6579 | Trial Transcript- Volume 7 |
| 12/16/08 | 216 | 6585-6586 | Stipulation of Dismissal |
| 12/17/08 | 218 | 6590 | Order of Time |
| 12/18/08 | 219 | 6591-6733 | Trial Transcript- Volume 10 |
| 12/19/08 | 223 | 6774-7029 | Trial Transcript- Volume 11 |
| 12/21/08 | 229 | 7211-7214 | Defendant's Objection to Adverse Impact Jury Instruction |
| 12/22/08 | 233 | 7230-7243 | Trial Transcript- Volume 12 |
| 12/23/08 | 237 | 7312-7355 | Jury Verdicts (December 23, 2008) |
| 12/23/08 | 238 | 7400-7401 | Order- Re: Trial |
| 12/23/08 | 240 | 7402-7404 | Written Jury Questions |
| 1/26/09 | 254 | 7482-7522 | Plaintiff's Amended Proposed Findings of Fact and Conclusions of Law |
| | | | |

| Date | Record Number | Page ID Number | Document Description |
|------|---------------|----------------|----------------------|
| 2/9/09 | 257 | 7536-7541 | Plaintiff's Motion for Promotion with back pay |
| 3/11/09 | 263 | 7554-7561 | Defendant's Opposition to Motion for Promotion with back pay |
| 10/2/09 | 277 | 7736-7747 | Findings of Fact and Conclusions of Law |
| 10/2/09 | 278 | 7748-7754 | Judgment Entry for Plaintiffs |
| 10/19/09 | 280 | 7756-7758 | Plaintiffs' Fed. R. Civ. P. 59(e) Motion to Alter and Amend |
| 11/25/09 | 285 | 7778-7815 | Defendant's Renewed Motion for Judgment or Motion for a New Trial |
| 11/25/09 | 286 | 7816-7818 | Defendant's Appendix to Brief in Support of Renewed Motion for Judgment or Motion for a New Trial |
| 11/25/09 | 286-1 | 7819-7847 | Appendix Part 1 |
| 11/25/09 | 286-2 | 7848-7870 | Appendix Part 2 |
| 11/25/09 | 286-3 | 7871-7896 | Appendix Part 3 |
| 11/25/09 | 288 | 7903-7927 | Plaintiffs' Brief and Memorandum in Support of its Fed. R. Civ. P. 59(e) Motion |
| 1/11/10 | 294 | 7826-7847 | Plaintiff's Reply to Motion to Alter or Amend Judgment |
| 9/30/10 | 307 | 7971-7973 | Order upholding liability; granting new trial on damages only |
| 10/11/10 | 308 | 7974-7975 | Plaintiffs' Supplemental Initial Disclosures |
| 11/9/10 | 309 | 16337-16396 | Trial Transcript- Volume 13 |
| 12/30/10 | 311 | 8038-8072 | Memorandum of Opinion re: 307 |
| 1/24/11 | 313 | 8074-8075 | Notice of Appearance on behalf of the City |
| 1/25/11 | 314 | 8076-8080 | Defendant's Motion to Alter or Amend Memorandum of Opinion |
| 1/31/11 | 315 | 8081-8082 | Order setting schedule for filing position statements regarding new trial on damages |
| 2/10/11 | 320 | 8144-8150 | Plaintiff's Opposition to Defendant's Motion For Interlocutory Appeal |
| 2/22/11 | 322 | 8156-8162 | Defendant's Position Statement- Re: New Trial for Damages |

| Date | Record Number | Page ID Number | Page ID Number |
|------|---------------|----------------|----------------|
| 2/22/11 | 323 | 8163-8167 | Plaintiff's Position Statement As to Further Proceedings |
| 4/5/11 | 326 | 8173-8179 | Order scheduling damages re- trial |
| 6/23/11 | 357 | 8275-8315 | 05/09/11 Conference Transcript |
| 6/24/11 | 358 | 8316-8345 | 06/15/11 Conference Transcript |
| 6/24/11 | 359 | 8346-8351 | The City's Motion to Compel Discovery |
| 6/24/11 | 360 | 8453-8454 | Plaintiffs' notice of no longer pursuing emotional distress damages |
| 7/1/11 | 370 | 8808-9169 | Notice of Filing Plaintiffs' Deposition Transcripts |
| 7/1/11 | 370-2 | 8887-8995 | 06/02/11 Deposition Transcript of Gregory L. Snyder |
| 7/1/11 | 371 | 9170-9582 | Notice of Filing Plaintiffs' Deposition |
| 7/1/11 | 372 | 9583-9979 | Notice of Filing Plaintiffs' Deposition Transcripts |
| 7/1/11 | 373 | 9980-10507 | Notice of Filing Plaintiffs' Deposition Transcripts |
| 7/5/11 | 387 | 10863-10868 | Order awarding Plaintiffs attorneys' fees |
| 7/6/11 | 389 | 10876-10878 | Plaintiffs' Notice of Attorney Fees Incurred |
| 7/7/11 | 390 | 10882-10886 | Order awarding Plaintiffs interim attorney fees in the amount of $250,000 |
| 7/8/11 | 403 | 10937-10941 | Order converting jury trial to bench trial on back pay |
| 7/11/11 | 404 | 10942-10982 | Transcript of 7/7/11 Pretrial Conference |
| 7/13/11 | 411 | 11071-11091 | Plaintiffs' Trial Brief |
| 7/13/11 | 415 | 11101-11103 | Plaintiffs' Exhibit List |
| 7/13/11 | 416 | 11104-11108 | Order- Re: Promotions |
| 7/14/11 | 419 | 11115-11117 | Defendant's Notice of Appeal |
| 7/15/11 | 429 | 11282-11285 | Plaintiffs' Amended Exhibit List |
| 7/17/11 | 431 | 11296-11306 | Motion to enforce order to promote Plaintiffs |
| 7/18/11 | 434 | 11342 | Order continuing bench trial to 07/25/11 |
| 7/18/11 | 435 | 11343-11363 | Order denying Akron a suspension of the promotion order |
| 7/20/11 | 438 | 11381-11382 | Order from Sixth Circuit granting temporary stay of promotions |

| Date | Record Number | Page ID Number | Page ID Number |
|---|---|---|---|
| 7/21/11 | 441 | 11399-11405 | Plaintiffs' Motion for Reconsideration |
| 7/21/11 | 441-4 | 11409 | List of Lieutenant Promotions (beginning on May 16, 2005) |
| 7/21/11 | 441-5 | 11410 | List of Captain Promotions (beginning on May 16, 2005) |
| 7/22/11 | 443 | 11412-11414 | Order from Sixth Circuit denying City's request for stay |
| 7/22/11 | 444 | 11415-11417 | Order allowing Akron to use "provisional" appointments for promotions |
| 7/25/11 | 448 | 11482-11485 | Order- Re: Memorializing Court's Oral Orders |
| 7/25/11 | 449 | 11486 | Order  denying Plaintiffs' Motion for Reconsideration |
| 7/26/11 | 454 | 11521-11524 | Order regarding Formal Promotion |
| 7/27/11 | 455-1 | 11528-11656 | 07/25/11 Deposition Transcript of Bradley Carr |
| 7/27/11 | 457 | 11658-11673 | Plaintiffs' Notice of Filing Brief related to trial issues |
| 7/27/11 | 457-2 | 11671-11673 | Declaration of Bruce B. Elfvin |
| 7/25/11 | 467 | 12470-12540 (Tr. 1-71) | Transcript from Damages re-trial (July 25, 2011) |
| 7/26/11 | 468 | 12541-12792 (Tr. 72-323) | Transcript from Damages re-trial (July 26, 2011) |
| 7/27/11 | 469 | 12793-13001 (Tr. 324-532) | Transcript from Damages re-trial (July 27, 2011) |
| 7/28/11 | 470 | 13002-13158 (Tr. 533-689) | Transcript from Damages re-trial (July 28, 2011) |
| 8/1/11 | 471 | 13159-13162 | City's Computation of Attorney Fees |
| 8/2/11 | 472 | 13192-13193 | Order instructing City to submit unredacted invoices *ex parte* and under seal for *in camera* review |
| 8/9/11 | 476 | 13213-13214 | Order directing Plaintiffs' Counsel to deposit $200,000 with the Court registry |
| 8/10/11 | 478 | 13216-13218 | City's Supplement to Computation of Fees and Costs |
| 8/10/11 | 479 | 13219-13234 | Defendant's Response to Plaintiff's July 27, 2011 and July 28th Filings |

| Date | Record Number | Page ID Number | Page ID Number |
|------|---------------|----------------|----------------|
| 8/12/11 | 483 | 13362-13377 | Plaintiffs' Motion for Reconsideration |
| 8/12/11 | 484 | 13407-13418 | Written Order memorializing exclusion of Plaintiffs' Exhibit 208 and contemplation of sanction of attorney fees pursuant to 28 U.S.C. § 1927 |
| 8/16/11 | 493-1 | 13997-14177 | Plaintiffs' Exhibit 208 |
| 8/22/11 | 496 | 14304-14438 | Plaintiffs' Notice of Request for Unredacted Attorney Fee Bills |
| 8/26/11 | 498-1 | 14445-14625 | Plaintiffs' Exhibit 208 (with exhibit labels and amended page 11) |
| 8/26/11 | 501 | 14704-14719 | Plaintiffs' Response to 08/12/11 Order and Request for Evidentiary Hearing |
| 8/26/11 | 502 | 14720-14771 | Plaintiffs' Opposition to City's Computation of Fees and Costs and Request for Evidentiary Hearing |
| 9/6/11 | 504 | 14856-14862 | City's Response to Plaintiffs' Request for Unredacted Attorney Fee Bills |
| 9/9/11 | 507 | 14872-14889 | City's Response to Plaintiffs' Request for Evidentiary Hearing |
| 9/9/11 | 508 | 14890-14899 | Plaintiffs' Motion for Leave to Reply to the City's Position |
| 7/19/12 | 520 | 15172-15293 | Transcript of Jury Instructions and Closing Arguments from 12/22/08 |
| 8/23/12 | 524 | 15327-15337 | Motion for permanent injunction |
| 8/23/12 | 525 | 15344-15346 | Motion to stay administration of promotional examinations pending appeal |
| 9/24/12 | 530 | 15357-15369 | Order sanctioning Plaintiffs' counsel in the amount of $97,056.18 |
| 9/24/12 | 531 | 15370-15372 | Order- Re: Defendant's Rule 52 Motion |
| 10/17/12 | 542 | 15449-15450 | Order: Damages re-trial to resume on Nov. 28, 2012 |
| 10/19/12 | 543 | 15451-15455 | Notice of Appeal of sanctions order by Plaintiffs and their counsel to 6th Circuit |
| 11/26/12 | 557 | 15535-15541 | Plaintiffs' "Exceptions and Objections to Oral Court Orders Re: Continued Retrial Regarding Back Pay" |

| Date | Record Number | Page ID Number | Page ID Number |
|------|---------------|----------------|----------------|
| 11/27/12 | 560 | 15817-15819 | Plaintiffs' Supplement to their objection relating to back pay |
| 11/27/12 | 560-1 | 15820-15821 | Declaration of Bradley Carr |
| 11/27/12 | 562 | 15828-15829 | Plaintiffs' Corrected Supplement to Objection re: Computations as to Differential Loss Incurred since July 22, 2011 |
| 11/27/12 | 562-1 | 15830-15852 | Plaintiffs' Ex. 211 |
| 11/27/12 | 562-2 | 15853-15875 | Plaintiffs' Ex. 212 |
| 12/5/12 | 565 | 15878-15930 (Tr. 690-742) | Damages Trial Transcript- Volume 5 |
| 12/17/12 | 572-1 | 16024-16064 | Plaintiffs' Proposed Findings of Fact and Conclusions of Law Relating to the Damages Trial (as corrected) |
| 7/22/13 | 584-1 | 16442-16458 | 6th Circuit decision in *Howe* I |
| 8/30/13 | 588 | 16479-16490 | "Findings of Fact and Conclusions of Law" with respect to damages trial |
| 9/4/13 | 589 | 16491-16493 | Order- Re: City's Renewed Motion for Judgment |
| 9/27/13 | 590 | 16494-16496 | Defendant's Notice of Appeal |
| 10/10/13 | 593 | 16499-16503 | Plaintiff's Notice of Cross Appeal |
| 1/29/14 | 608 | 16630 | Order setting briefing dates for, inter alia, Plaintiffs' motion for pre- and post-judgment interest |
| 2/4/12 | 609 | 16631-16639 | Sixth Circuit Opinion, Case No. 12-4262 (First Sanctions Appeal) |
| 2/19/14 | 613 | 16646-16654 | Plaintiff's Motion for Pre Judgment and Post Judgment Interest |
| 2/19/14 | 613-1 | 16655 | Exhibit 1 |
| 2/27/14 | 619 | 16902-16930 | Plaintiffs' counsel's Motion for Reconsideration as to the Sanctions Order |
| 3/12/14 | 627 | 17062-17063 | Stay Order |
| 3/19/14 | 634 | 17196-17200 | Plaintiffs' counsel's Reply in Support of Reconsideration |
| 3/27/14 | 643 | 17326-17337 | Order- Re: Plaintiff's Renewed Motion for Permanent Injunction |

| Date | Record Number | Page ID Number | Page ID Number |
|------|---------------|----------------|----------------|
| 3/27/14 | 644 | 17338-17339 | Order- Re: Plaintiff's Second Motion for Interim Fees |
| 4/8/14 | 653 | 17373-17382 | Order: Re- Court Monitor |
| 4/11/14 | 654 | 17383-17385 | Defendant's Notice of Appeal |
| 4/15/14 | 655 | 17386-17402 | Defendant's Motion to Suspend Permanent Injunction |
| 8/6/14 | 688 | 17804-17851 | Jury Instructions Transcript from 12/22/08 |
| 9/30/14 | 722 | 18050-18054 | Order granting Plaintiffs' motion for reconsideration of sanctions order (Doc. # 530) and vacating same |